## STATE SAVINGS BANK OF ANDERSON v. HARBIN.

Where a debtor mortgages his entire real estate, and subsequently a judgment
is recovered against him, the judgment creditor has the equitable right to
compel the mortgagor to first exhaust so much of the debtor's land as
embraces the homestead. FRASER, A. A. J., dissenting.

Before HUDSON, J., Anderson, July, 1881.

In this case Honorable Thomas B. Fraser, of the Third
Judicial Circuit, sat in the place of Mr. Justice McGowan, who
had been of counsel in the cause.

The Circuit decree thus states the case:

On July 22d, 1880, the plaintiff, a corporation, filed the afore-
said complaint to foreclose a mortgage on the real estate of
Morgan Harbin, and to this action made the other defendants
parties, as claiming an interest in said property by virtue of
liens held thereon by mortgage and judgment. The parties
defendant holding liens answered and claimed, by way of affirma-
tive relief, that their respective liens be foreclosed or enforced,.
and the same satisfied out of the proceeds of the sale of defend-
ant's land in the order of priority and legal right.

In his answer, the defendant, Harbin, interposes a claim of
homestead, which claim is resisted by the defendants, or some of
them. Morgan Harbin is the head of a family, and owns no
real estate except that described in the complaint, and is thus
fully qualified constitutionally to claim a homestead out of the
land described in the complaint. The question is whether he
has not deprived himself of the right of homestead as against
the aforesaid creditors.

The following are the facts found, and about which there
seems to be no dispute: On January 23d, 1875, the defendant,
Morgan Harbin, executed and delivered to his co-defendant,.
D. Arrington, his note, and, to secure its payment, a mortgage on
all his lands, including the tract whereon he lived—the note

being for $300, with interest at the rate of one per cent. per month. On January 29th, 1877, he gave to the plaintiff, the Savings Bank, his note for $1,535 at the legal rate of interest, and, to secure its payment, he executed and delivered to the bank a mortgage on that part of his land known as the Bolt tract, and furthermore, as collateral security for the note, he delivered to the bank a note due by W. F. Parker for the sum of about $800. This Bolt tract contains 324 acres, and lies adjacent to the Home tract of 276 acres, and the two really form one body of land, though consisting originally of two tracts, and still retaining different names. On March 1st, 1878, Joseph N. Brown, as administrator of the estate of E. M. Brown, deceased, recovered judgment against Morgan Harbin for $59.46, and $6.15 of costs. On February 19th, 1879, Harbin gave his two promissory notes for the aggregate sum of $167.98 to M. W. Coleman & Co., with interest at the rate of twelve per cent. per annum, and, to secure the same, executed and delivered to them a mortgage on all the lands aforesaid. On March 17th, 1879, the defendants, G. W. Maret and P. S. Mahaffey, as executors of the last will of John Coates, recovered judgment against Morgan Harbin for $798 and costs.

All the aforesaid mortgages are free from objection as to form and date of recording, the first and last constituting a lien on all Harbin's land, and the second only on the 324 acres or Bolt tract. The judgments are likewise free from objection as to form, were duly entered up, and constitute a general lien on the real estate of Harbin, and the cause of action in each judgment as well as mortgage arose subsequent to the adoption of our present constitution. The judgment in favor of the executors of Coates is the junior lien of all, but the cause of action is perhaps of older date, being in 1872. The tract of land mortgaged to the plaintiff, the 324 acres Bolt tract, has already been sold under a former decree of foreclosure and sale in this cause, all equities being reserved, and brought $1,410.

The questions raised in the pleadings and argument for the determination of the court involve conflicting equities between the creditors by judgment and mortgage as against each other, and Harbin. In behalf of the judgment creditors, it is contended

that they, having a right to enforce their liens only against so much of the land as is in excess of Harbin's homestead, have an equity to compel the mortgage creditors first to exhaust that homestead over which they have a lien and right of enforcing it, before they can be permitted to receive any part of the proceeds of the sale of the land in excess of the homestead.

It is needless to cite authority for the proposition that when one creditor has two funds to which he can resort for payment, whilst another creditor can resort to but one of them, equity will force the first creditor to exhaust in the first instance that fund to which the latter cannot resort, before he is suffered to share in the fund common to both. This well-established rule settles the equities in this case as between the judgment creditors and those holding mortgages. As between these two classes of creditors the mortgagees are in equity bound to exhaust the homestead before resorting to the excess. This applies specially to the first and third mortgagees, who hold liens on all the land.

As to the plaintiffs, the second mortgagees, they are compellable first to exhaust the note against Parker, and for any balance then due and unpaid, they have an equity to be first paid out of the Bolt tract, except as to what the homestead and home place want in paying Arrington. Should the home place of 276 acres fail to pay Arrington, for the deficiency he will have precedence of the plaintiff on the Bolt tract, and for that deficiency alone.

But the claim raised by the defendant Harbin, is the most perplexing. He claims an equity to have his homestead admeasured as against all the creditors; that the mortgagees cannot resort for payment to this homestead until they have exhausted the excess, and that judgment creditors can in no event sell his homestead nor force others to do so. So far as we know or remember this interesting question has not been decided by our Supreme Court. It has, however, been raised and determined by the courts of last resort in several of the States, but with a conflict of opinion—the courts of some States maintaining the equity of the homestead claimants and others denying it. These conflicting decisions will be found collated in *Thompson on Homesteads and Exemptions*, §§ 656–666.

The leading case cited by the learned author, and the one

which he seems to found the rule upon, is the case of *Searle* v. *Chapman*, 121 *Mass.* 19. In a note to section 656 will be found a full extract from the opinion of the supreme judicial tribunal of Massachusetts, delivered by Chief Justice Gray. In that case, in an action by a mortgagee to foreclose his mortgage, the mortgagor claimed the equity to compel the mortgagee to exhaust all the excess of land before selling that which should be admeasured as a homestead to defendant. The court below denied the equity, and the supreme judicial tribunal sustained the judgment in the aforesaid learned opinion, holding in substance that the homestead claimant is bound by his conditional sale of the homestead; and that "as against him, the mortgagee has the right to enforce the contract according to its terms and is not bound to elect between different remedies or securities."

Mr. Thompson says that the same doctrine prevails in Kansas; but that in some of the other States this equity of the mortgagor is recognized and enforced. In section 657 the author says: "If this is a sound rule where the only parties affected by it are the mortgagor and mortgagee, it becomes more imperative where to deny it would prejudice the rights of third parties, such as judgment creditors of the mortgagor. It then becomes a rule for the application of the familiar rule of ~quity, that when a creditor has a claim upon two funds, upon o..e of which another creditor has also a claim, and such other person will be prejudiced by allowing such creditors to satisfy his debt out of the fund subject to both claims, a court of equity will compel the creditor to take satisfaction out of the fund to which he alone has a claim, in the first instance. He must exhaust that fund before resorting to the other. He must foreclose his mortgage on the homestead before he can claim the right to share with general creditors, as to any unsatisfied balance, in the proceeds of the sale of his mortgagee's estate." In support of this position he cites *White* v. *Polleys*, 20 *Wis.* 530, a leading case which induced the legislature of Wisconsin to pass a special act to meet such an emergency, and to protect the equity of the homestead claimant.

We think that in the absence of a statute of like character in our State, the doctrine of *Searle* v. *Chapman*, and *White* v. *Polleys*, is the true rule, and in perfect accord with fairness and good

faith. Were a different rule to be applied to the case now under consideration, its hardship and unfairness would be manifest. It would authorize a man owning real estate largely in excess of a homestead to obtain credit upon the faith of that excess, perhaps to the full extent of its value. After these claims have been sued, but before judgment, additional credit of an equal amount is obtained on the faith of a mortgage of the same land. In an action to foreclose the mortgage to which the judgment creditors are parties, it would be in violation of all ideas of justice and equity to hold that the mortgagee could be compelled to shift the lien of his mortgage off the homestead, and first exhaust the excess and thus entirely defeat the judgment debts on contracts senior to the mortgage debt.

In our opinion the debtor, Harbin, having several times conveyed away his homestead by way of mortgage, has no equity now to compel the mortgagees to refrain from selling his homestead, especially since it would work injustice and hardship to the judgment creditors who are co-defendants in this action. It is therefore ordered, adjudged and decreed—

1. That it be referred to the master of this court to ascertain and report the amount of principal, interest and costs due upon the judgments and mortgages aforesaid respectively.

2. That the defendant, Morgan Harbin, have until the first Monday of November next in which to pay the said mortgage debts, and that, in case of his failure so to do, the master of this court, having first duly advertised the same, according to law, for sale, &c.

3. That by said sale the said Harbin and all persons claiming under, by or through him any interest in said premises, shall be forever barred and foreclosed of any equity of redemption in and to said land, and the same shall likewise be by said sale free and discharged of any and all lien of said judgment creditors thereon.

\*     \*     \*     \*     \*     \*     \*     \*

5. That before sharing in the proceeds of the said sale herein ordered and that already made, the plaintiff, the Savings Bank of Anderson, must first exhaust its remedy on the note of W. F. Parker and apply the proceeds thereof to the payment *pro tanto* of its debts against Harbin, and only for any balance remaining

thereafter shall said plaintiff share in the proceeds of the mortgaged premises.

6. That out of the gross sale made and to be made, shall first be paid the costs of said sale and of this action.

7. Subject to the above restrictions, the net proceeds of the sale of said land sold and to be sold, shall be distributed as follows, viz.: 1. To the payment in full of the senior mortgage debt. 2. To the mortgage debt next in seniority in full, if the Bolt tract will pay so much. 3. To the Brown judgment in full. 4. To the mortgage debt of M. W. Coleman & Co. in full. 5. To the judgment of the executors of Coates in full. 6. That should a balance be left, it be applied to any balance of the plaintiff's demand remaining unpaid from proceeds of said note and the Bolt tract, and for any such balance an execution may be issued. 7. Should a surplus still be left, the same must be paid to the defendant Harbin, his agent or attorney.

8. That the parties are at liberty to apply for any further administration order, at the foot of this decree, to carry the same into effect and in furtherance of the cause.

From this decree the defendant, Harbin, appealed in words following:

The defendant, Morgan Harbin, admitting the right of every party to this action who is a lien creditor, to have his homestead sold, if necessary for the payment of their respective liens, except the judgment of the defendants, Maret and Mahaffey, as executors of the will of John Coates, deceased, appeals from the decree of his Honor, Judge Hudson, filed in this action on July 5th, 1881, on the following ground, to wit:

Because his Honor erred in adjudging that the defendant, Morgan Harbin, was not entitled to have his homestead set off as against the judgment of Maret and Mahaffey, executors, because he had created a prior lien thereon by mortgage to other persons of that and other surplus land, enough to pay off such prior liens, adjudging the equity of said judgment creditors to compel the prior mortgagees to go upon the homestead for the collection of their mortgage debts, so as to leave the surplus liable to sale for the payment of said judgment, superior to the equity of the debtor, Morgan Harbin, to require the mortgagees

to exhaust the surplus in the payment of their debts, so as to leave him in the enjoyment of his homestead.

*Mr. J. J. Norton,* for appellant.

The appellant is entitled to his homestead as against the judgment of Maret and Mahaffey. *Const. of S. C., Art. II.,* § 32; 15 *Stat.* 369. The land must be sold in parcels, and only so much as is necessary to pay the mortgage debts, leaving out the homestead. *Fifty-third Rule Circuit Court; Smyth Exemp.,* § 276. If the parcels outside of Harbin's homestead pay the prior liens, then it cannot be sold to pay Maret and Mahaffey's judgment.

*Messrs. R. A. Thompson, Wells & Orr,* contra.

April 17th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. The facts of this case are so fully and clearly stated by the Circuit judge, that it seems unnecessary to repeat them here.

It is conceded that the question raised by this appeal is novel in this State, and that the authorities elsewhere are conflicting. It is necessary, therefore, to consider the general principles applicable, and from them to deduce the proper conclusion. There is no dispute as to the general rule, that where there are two creditors of a common debtor, one of whom has a claim or lien upon two funds, and the other upon only one of these funds, that the latter has an equity to require the former first to exhaust the fund upon which he has no claim or lien. The only qualification of this rule, laid down in the elementary writers, is that it will not apply where the creditor having the lien upon the two funds will be injured or delayed by its application. 1 *Story Eq. Jur.,* § 633 *et seq.* This rule is for the benefit of the creditor only, and cannot be invoked in behalf of the debtor unless some peculiar equity springs up from other circumstances, as, for example, where the debtor occupies the position of a surety.

I am unable to perceive any reason why this well settled and universally acknowledged rule should not be applied to the present case. There is no suggestion that its application would

tend to injure or delay the creditors having liens on the two funds. All the parties are before the court, and the only objection proceeds from the common debtor, who does not occupy the position of a surety, and I do not see any equity on his part to interpose an objection to the application of the rule. His right of homestead is not an estate, but is a mere right to have a certain portion of his property "exempt from attachment, levy or sale, on any mesne or final process issued from any court."

If he has voluntarily stripped himself of this protection which the law has thrown around him, by twice mortgaging the land, out of which he would otherwise have been entitled to claim a homestead, he cannot complain at a result brought about by his own act, and he certainly has no such equity as would protect him from the operation of the rule above stated. The only creditor who would be likely to suffer under a different conclusion, is one who seems to have extended credit to the appellant before there were any liens upon any of his property, and it would seem to be manifestly inequitable that this creditor should suffer from an indulgence extended to the appellant, perhaps, in reliance upon a well settled and universally acknowledged rule.

All the authorities seem to concede the proposition that, as between the debtor and his mortgagee, the former has no equity to require the latter first to exhaust the other property embraced in the mortgage before he can go upon that out of which homestead is claimed, and, as Mr. Thompson, in his work on homesteads, section 657, well remarks: "If this is a sound rule where the only parties affected by it are the mortgagor and mortgagee, it becomes more imperative where to deny it would prejudice the rights of third parties, such as judgment creditors of the mortgagor." It would, indeed, be a strange perversion to deny the equity claimed by the debtor in a case where its application would injure no one, and yet allow it in cases where innocent third persons would be the sufferers.

The analogy drawn from the case of a devise of lands to charitable uses, does not seem to me to be complete. Creditors stand upon much higher ground than devisees or legatees, and the reason given by Lord Hardwicke, in *Mogg* v. *Hodges*, 2 *Ves.*

53, for not applying the rule in a case of a devise to charitable uses is, "that a court of equity is not warranted in setting up a rule of equity contrary to the common rules of the court, merely to support a bequest which is contrary to law." In the case now under consideration, it is not proposed to set up the rule of equity as to a creditor having a lien upon two funds for the purpose of securing the payment of an illegal debt, or "to support a bequest which is contrary to law," but simply to provide for the payment of a just debt, subject to no legal exception whatsoever, not out of property exempt by law, but out of property liable for its payment, by throwing another debt upon the homestead property, which the debtor has voluntarily subjected to its payment by giving a mortgage on it.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE FRASER, *dissenting.* I am unable to concur in the judgment of the majority of the court in this case. The single question presented by this appeal is whether Maret and Mahaffey, executors, judgment creditors of Morgan Harbin, have the right to compel the mortgagees, Arrington and Coleman & Co., who have prior mortgages of the Home tract of land, the homestead of Morgan Harbin, as well as of the Bolt tract of land, to sell the homestead and apply the proceeds to their mortgage debts, so as to leave the Bolt tract for the payment of their judgment. It is not a question here whether these mortgagees have a right, as between themselves and the mortgagor, to demand that the homestead shall be sold before the surplus land, but it is whether the mortgagees, against their will, can be compelled, at the suit of the judgment creditor and for his benefit, to sell the land in that order.

The application of the doctrine of marshaling assets forms one of the most useful, and at the same time most delicate, branches of equity jurisdiction. It depends on this principle: "That a person having two funds to satisfy his demands, he

2c

shall not, by his election, disappoint a party who has only one fund. If, therefore, a person having a claim upon two funds chooses to resort to the only fund upon which the other has a claim, that other person shall stand in his place for so much against the fund to which otherwise he could not have access." 2 *Lead. Cas. Eq., H. & W., Pt. I., p.* 151; *Aldrich* v. *Cooper,* 8 *Ves.* 382. The doctrine is not confined to claims of creditors, and it is no peculiar equity to which they are entitled. It extends to the widow's paraphernalia (*Id., p.* 156), to purchasers (*Id., p.* 171), to legatees and devisees (*Id., p.* 180), and sureties who are no more than debtors as between themselves and those to whom they are bound as such, will be subrogated to all the rights of the creditor on payment of the debt. *Id.* 166.

In cases of devises of land to charitable uses, Lord Hardwicke, in *Mogg* v. *Hodges,* 2 *Ves.* 53, says: "That a court is not warranted in setting up a rule of equity, contrary to the common rules of the court, merely to support a bequest which is contrary to law," and he refused to throw the payment of debts and ordinary legacies on the real estate, so as to leave the pure personalty for the charity. *Id.* 157, 191, 192; 2 *Story Eq. Jur.,* § 1180. In the note at pages 191 and 192, in Leading Cases in Equity, it is said to be "well settled that where a devise of lands to charitable uses is prohibited by law, equity will not sustain a bequest to a charity by marshaling the assets, so as to throw the burden of the testator's debts on the land, for this would be contrary to the spirit of the legal prohibition."

Article I., section 20, of the constitution of this State, provides that "a reasonable amount of property, as a homestead, shall be exempted from seizure and sale for the payment of any debts or liabilities." Article II., section 32, defines the homestead, and provides that "it shall be the duty of the General Assembly, at its first session, to enforce the provisions of this section by suitable legislation." In pursuance of this injunction, an act was passed at the first session, and from time to time it was amended. The act of 1873, § 5 (15 *Stat.* 371): "No waiver .of the right of homestead, however solemnly executed, shall be binding upon the head of the family, or in case of his or her death, his or her heirs, so as to defeat the homestead herein pro-

vided for." By section 10 of the same act, it was made a misdemeanor in any officer to sell any property in violation of said act, and article II., section 32, of the constitution.

Thus stood the law at the time the liens in this case were acquired. The creditor or other claimant having only one fund is simply subrogated to the rights of a creditor who has two funds, as to the fund to which he is allowed to resort for payment. When, as in this case, the judgment creditor is put by the court in the place of the mortgagee as to the homestead, it is clearly against the spirit of the constitution and the statutes in reference to the homestead, that he shall be allowed to subject the homestead to his claim. The mortgagee certainly had a right to mortgage, and even convey in fee-simple, to whom he pleased, his homestead. But in this case he may well say, I have made no such agreement and I have not even waived my right to the homestead in favor of the judgment creditor.

If the Court of Equity will refuse to marshal assets so as to make a charity indirectly a charge on real estate by throwing creditors on the land and leaving the personalty for the charity, because it would be against the policy of the law, the same reason should induce this court, it seems to me, to refuse to marshal the funds in this case so as to make a judgment indirectly chargeable on the homestead, when such homestead is not only exempt by law, but the head of the family is not allowed to waive the right thereto, and the officer forbidden, under heavy penalties, to sell the same.

If the principle on which the judgment of the Circuit Court rests is properly applicable to such cases, then there can be no case in which a homestead could not be sold to pay all outstanding debts, as soon as the head of the family who happens to own other property, ventures to mortgage the homestead and other property, to secure any one of them, or to raise money to meet the exigencies of the family.

It is a new question in this State, and in other States where a homestead law has been longer in existence, the decisions are conflicting. In *Searle* v. *Chapman*, 121 *Mass.* 19, the mortgagee brought his action against the mortgagor for foreclosure, and the mortgagor set up a claim as against the mortgagee to

compel him to séll the surplus first, so as to save the homestead. In this case there was a release by the husband and wife of all claim of homestead and dower. The court refused to sustain the defense. In Massachusetts, "as between mortgagor and mortgagee, the mortgage is to be regarded as a conveyance in fee," which "gives the mortgagee a remedy in the form of a legal action." Shaw, C. J., in *Ewer* v. *Hobbs*, 5 *Metc.* 1–3, and *Howard* v. *Robinson*, 5 *Cush.* 119–123. It is true that in Massachusetts as to all other parties, as in this State, a mortgage is a mere security for the payment of money, but this difference of view as to the nature of a mortgage, ought to induce this court to hesitate to adopt the conclusions in that case, and to regard it as not sufficient authority for the inference for which it is quoted at the bar as authority in this case—that a judgment creditor has the right to compel the mortgagee to sell the homestead before the surplus. In *Searle* v. *Chapman*, the court simply declined to interfere with the rights of the mortgagee.

This distinction has been recognized in Kansas. In the case of *Chapman* v. *Lester*, 12 *Kan.* 592, it was held, "that when a person mortgages his homestead, together with other realty, there is no such implied obligation on the mortgagee first to exhaust his remedy on the realty other than the homestead, as will prevent him from releasing such other realty other than the homestead, and still retaining his lien on the homestead." And in a later case of *Colly* v. *Crocker*, 17 *Kan.* 527, it was held that the grant of a specific lien upon the homestead to secure a specific debt, does not amount to such a waiver of the homestead right, that an unsecured creditor can procure it to be sold in a proceeding for the marshaling of assets. In this case of *Colly* v. *Crocker*, a husband and wife mortgaged the homestead and other real estate to A. B. obtained a judgment upon the other property excepting the homestead, and then the husband sold a piece of property covered by the judgment and mortgage lien to C. The court held that the unsecured creditor had no such superior equity over the occupants of the homestead and the purchaser C., that he could compel a marshaling of the assets on the death of the husband.

In Illinois it was held, in *Brown* v. *Cozard*, 68 *Ill.* 180, that

" when a mortgagee, not by his own voluntary action and for his own benefit, but at the instance and for the benefit of a judgment creditor for the purpose of having his judgment satisfied, is compelled to resort first, for the satisfaction of his mortgage, to the tract subject to the homestead exemption, as respects the judgment, the mortgagor would then seem to have just cause for complaint that his homestead had been taken away from him in a mode not contemplated by the statute, and whereto he had never given his consent."

In Minnesota, in *McArthur* v. *Martin*, 23 *Minn.* 80, it was said that " homestead exemptions are favored by the courts, and as the application of the rule contended for in reference to the marshaling of assets, would be but an indirect method of subjecting the homestead to the payment of debts, a court of equity would not permit it to be applied in favor of judgment creditors in this case."

In Alabama, in *Ray* v. *Adams*, 45 *Ala.* 168, it was held that " the right of the debtor to his exemption, though inferior to that of his mortgagees, was superior to that of his judgment creditors. The prior mortgage did not enlarge his rights." In *Ray* v. *Adams*, there had been a sale under the judgment, and the debtor having been put to his election, had chosen what was set off as a homestead, and the balance of the real estate was sold. Upon a cross-bill by the judgment creditor and purchaser to compel the mortgagee first to exhaust the homestead, for their benefit, the court refused to give the relief sought.

A contrary doctrine was distinctly laid down in *White* v. *Polleys*, 20 *Wis.* 530, in which the court applied the general rule of equity that where one person has only one fund to which he can resort, and another person has two funds, the latter will be compelled to resort to that fund which will leave the means of payment for the person who has only one fund out of which he can be paid. Subsequently to the rendering of this decree a statute was passed in Wisconsin, " the object of which was to repeal the rule laid down in *White* v. *Polleys* and other cases." *Thomp. Homest. and Exempt.*, § 660. The cases on this subject will be found well collected in the valuable book last quoted.

The weight of authority, I think, is against the ruling of the

Circuit judge, and leans to the opinion that while a mortgagee may have the right to select to sell the homestead first, and the surplus afterwards, if necessary, or *vice versa,* as to him may seem best, other creditors have no right to compel their choice one way or the other. I have already shown that the Court of Equity has never, as in the case of charities, applied the doctrine of marshaling, so as to bring about indirectly a payment out of a fund which cannot, by law, be made out of it directly on account of some positive prohibition.

The provisions in the constitution of 1868 in favor of the homestead, reserved it from attachment, levy or sale under mesne and final process to the head of the family, and the acts of the General Assembly in pursuance of the constitution to enforce the same are remedial in their nature, intended to establish a great public policy, and in doubtful cases it is the duty of the court in every fair and legitimate way to extend the remedy. In this State a mortgage is nothing more than a security for the payment of money, and cannot be extended beyond the contract of the parties. It is no part of the contract in an ordinary mortgage that the property shall be liable to the claims of creditors not contemplated in its terms, and it is difficult to see how any rule of equity for marshaling assets can be allowed to work a benefit in favor of creditors which the head of the family cannot create, by " any waiver, however solemn." It is not necessary to say judgment creditors, because all creditors can put their claims into judgments, and if judgment creditors have any rights, then all creditors may sooner or later obtain them.

The judgment creditor, under the constitution and the acts of the General Assembly, has no right to sell the homestead under his judgment in the usual way, and is even forbidden to do so under heavy penalties against the officer executing the process, and the court, I think, has no right to extend the terms of the mortgage, so as to enable creditors not contemplated in it to obtain indirectly an advantage which they could not do directly, because of a positive prohibition of the statute.

Judgment affirmed.