# Pittman's Appeal.

*Distribution of proceeds of sheriff's sale.—Holders of exemption judgments, when compelled to resort to exempted fund.—Equitable rule in favour of judgments without waiver as against those with waiver, in a contested distribution.*

1. If there be no waiver of the right to exemption by the debtor in a judgment upon which his real estate is sold, he is entitled to claim it, in the distribution of the proceeds of sale, though judgments to a greater amount, with the waiver of exemption, are also presented before the auditor.

2. But where some of the judgments are without the waiver, the holders can compel the judgment-creditors with waiver, to resort first to the exempted fund for payment.

APPEAL from the Common Pleas of *Indiana county.*

This was an appeal by Benjamin Pittman, from the decree of the court below distributing the proceeds of the sheriff's sale of his real estate. There were eight judgments on record against Mr. Pittman, on two of which, viz., the second and fourth, there was a waiver of the benefit of the Exemption Law, before July 4th 1844. The writ under which the property was sold was an *alias fi. fa.* on the seventh judgment. It was placed in the sheriff's hands October 15th 1862, and on the same day the defendant claimed in writing the benefit of the Exemption Law.

The property was appraised, and as three hundred dollars' worth could not be conveniently cut off from the lot, the whole

[Pittman's Appeal.]

was sold together for $790, and the money brought into court for distribution.

The defendant appeared before the auditor and claimed $300 out of the proceeds of sale.

It was proved before the auditor that the fourth lien had been considered as paid before the sheriff's sale.

The auditor (H. B. Woods, Esq.) reported four schedules for distribution, marked A, B, C, and D, leaving the legal question raised by the facts, for the decision of the court, but submitting the following opinion :—

" There being no waiver in the judgment upon which this property was sold, the effect of the defendant's claim for ' the benefit of the Exemption Law,' is to divide the fund into two parts— one of $300 belonging to the defendant, subject to the right of any of his creditors, and the other of the balance of the fund.

" The first judgment being for a debt contracted before the 4th of July 1849, is superior to any other claim on this fund, after satisfying costs of sale and audit. It has priority of lien, and is not subject to the operations of the Exemption Act. The rights of the plaintiff cannot be affected by subsequent legislation. So far as this judgment is concerned there can be no two funds. The whole fund, if necessary, will be taken to satisfy this judgment. Anything the defendant may do will not divide the proceeds of this sale so as to affect a debt existing before the passage of the Act of 1849. It is clear then to the auditor's mind that before any separation of this fund can be allowed the first judgment must be satisfied; that it is only claims since the 4th July 1849 that are affected by the operations of the Exemption Law, and to which, two funds can be created out of proceeds of a defendant's real estate by reason of the defendant's claim of the benefit of the Exemption Law. If the defendant has various judgment-creditors for debts contracted since 1849, and waives the benefit of the act in one judgment, subsequent judgment-creditors may demand that equity be done so that all or as many judgments as possible be paid. But the rights of the plaintiff in the first judgment are not subject to the application of any principle which will require him to pursue a particular part or portion of this fund to satisfy his judgment. He must be paid first out of the whole fund; and if any equities are to be adjusted between creditors whose claims are subject to the operations of the Act of 1849, they must be adjusted out of the balance of the fund remaining for distribution after the first judgment is satisfied.

" There being a waiver in the second judgment, and none in some of the subsequent judgments, equity will require that this judgment be satisfied out of that fund that is beyond the reach of other creditors; that is, out of the $300 claimed by defendant.

The third judgment has no waiver of the Exemption Law, but the fourth, which was satisfied before the sale, has. This shows that defendant intended to relinquish his right to have $300 exempted from levy and sale thus far, and is an abandonment of his claim, so far as the third judgment is concerned. Were it otherwise, his waiver might have the effect of changing the law requiring the liens to be paid in the order of priority. Therefore the third and fourth judgments had an advantage over subsequent judgments (assuming that a waiver in a judgment does not affect the defendant's right in subsequent judgments), and the application of a well-established principle in equity would require the plaintiffs in these judgments to first exhaust the fund that cannot be reached by other creditors before coming on the fund common to all. In this case the $300 fund claimed by defendant would be exhausted before the fourth judgment, which contains a waiver, would be reached. The result is, that this entire fund, after deducting costs, must be distributed to lien-creditors according to priority of liens, which is done as per schedule A of distribution.

" The counsel for the plaintiffs in the fifth judgment contended that the waiver in the fourth judgment operated as a waiver in all prior judgments, as well those for debts before 1849 as since, and that all would have to be paid out of the $300 claimed by the defendant, if that amount were sufficient. In this they differ from the auditor so far as the first judgment is concerned. As regards this case it can make no difference. The same distribution will result if the law be interpreted as contended for by them, as if schedule A be correct.

" But the counsel for defendant take quite a different view of the law. They contend that the defendant has rights under the Exemption Law that cannot be taken from him so long as those judgments containing a waiver will be satisfied in their proper order of lien. That the equitable principle before spoken of cannot be applied between two creditors to the prejudice of the defendant, he being a third party; that the $300 claimed by defendant cannot be taken from him to pay any judgment that will be satisfied out of the balance of the fund because of its time and place in the list of liens. They would have the fund distributed as in schedule B."

The court below adopted schedule A, in which the defendant's claim was disregarded, and the balance in court divided among the judgment-creditors; which was the error assigned.

*Weir & Stewart*, for appellant.—An application of the law as announced in Shelly's Appeal, 12 Casey 373, to the facts, will result in a different appropriation of the money from that made by the court below. The distribution ought to be as follows,

viz.: Whole fund for appropriation, after deducting costs of sale, &c., is $739.04. The first judgment being for a debt contracted prior to the passage of the Exemption Law, and being also the first lien, must be 'first in the order of payment. The amount of debt, interest, and cost of this judgment is $310.17. This sum taken from $739.04, leaves a balance of $428.87, to be applied to the defendant and the subsequent judgment-creditors according to their respective rights. The effect of Pittman's claim of exemption was to divide this balance into two funds, $300 of it belonging to him, and $127.87 to his creditors generally, in the order of their respective liens. The defendant having waived his exemption in favour of the plaintiffs in the second judgment, gives them a lien on both funds; the other subsequent creditors on one only. This gives the subsequent creditors an equitable right to force the plaintiffs in the second judgment, which contains a waiver, upon the fund that the other creditors cannot touch. This judgment, including debt, interest, and costs, amounts to the sum of $113.97. This taken from the defendant's $300, leaves a balance of $186.03 of the fund which belongs to him, and $128.87 to be applied to the fourth, the judgment being the next in order of lien upon the record. This appropriation is the law of distribution as laid down in Shelly's Appeal. It is what the defendant contended for in the court below, and is the rule adopted by the auditor in schedule C of his report. The doctrine that a waiver by a defendant of his statutory exemption in favour of junior lien-creditors enures to the benefit of all his creditors in the proper order of their liens, does not apply in this case. Pittman only waived his right in favour of the first judgment-creditor, after the passage of the "act"—the subsequent judgments contained no such waiver. But it is contended that the first judgment being for a debt contracted prior to the Exemption Law; and the second judgment being the first lien after that enactment, these judgments stand upon the same footing, are liens on both funds, and by the application of the equitable principle recognised in Shelly's Appeal, the subsequent lien-creditors can force them in the first place to exhaust that portion of the fund upon which they have no lien and cannot reach. And this seems to have been the view taken by the judge of the Common Pleas, and the point upon which we think he manifestly erred. There is a distinction made in the rulings of this court between a voluntary waiver by defendant and cases excluded from the operation of the Act of 1849 by its terms, or the nature of the writ upon which the sale is made, when it precludes a separation or division of the property. A defendant whose real estate is sold upon a mortgage, is entitled to exemption out of the proceeds of the sale against subsequent judgments, without demanding an appraisement and division of the property: Hill

*v.* Johnston, 5 Casey 362. And upon the same principle, a defendant whose land is sold on a judgment obtained before the passage of the Exemption Law, or upon a judgment for purchase-money, would be entitled to share in the proceeds on a claim of his statutory privilege against subsequent lien-creditors, without having previously to the sale demanded an appraisement. But a debtor whose property is sold on a judgment wherein he has waived his privilege can take no part of the money arising from the sale on a claim for exemption. This results from an application of the rule that the claim for the benefit of the Exemption Law must be made in the case which is the instrument of effecting the sale: McAfoo's Appeal, 8 Casey 276. This, however, is but a general rule, to which there are exceptions, some of which are, as already mentioned, sales upon mortgages, judgments for purchase-money, and for debts contracted prior to the passage of the act, &c. The reason of the exception is found to exist in the distinction made by this court between the voluntary act of waiver by the debtor, and the act or operation of law. In the case of waiver it is the defendant's own voluntary act that deprives him of the privilege of exemption. In the case of mortgages, judgments for purchase-money, and for debts contracted prior to the passage of the act, his prohibition to claim exemption is the act or operation of the law, which is not permitted to take away his rights as against other creditors, because over that he has no control. An application of this distinction to Pittman's case will give him $186.03, the amount of the fund claimed.

*Stewart & Clark*, for appellees.

The opinion of the court was delivered, January 5th 1865, by
WOODWARD, C. J.—The auditor states the facts of the case so clearly, and applies the principles of law so correctly, that we have little more to do than to approve of the distribution made in his schedule A.

There being no waiver of exemption in the judgment upon which the property was sold, the defendant had a right to claim $300 of the proceeds, and was properly admitted to contest the distribution, but not as against judgment-creditor No. 1; for that debt having been contracted before 4th July 1849, was entitled to be paid without regard to the debtor's claim.

The other judgments, however, being all for debts after that date, were liable to be affected by his claim; but having waived his right in respect to the second and fourth judgments, what was the effect of his now setting it up against the other creditors? We considered this question in Shelly's Appeal, 12 Casey 373, and we say here as we did there, that the effect of admitting the

[Pittman's Appeal.]

debtor to the distribution is to divide the fund into two parts, one of which belongs to him, the other to his judgment-creditors generally. By virtue of the waiver in favour of the second and fourth judgment-creditors, they have a lien on both funds; the other judgment-creditors on only one. Two of several creditors of a common debtor having a lien on two funds, and the other creditors a lien on but one, presents the ordinary case in equity in which the two creditors would be compelled to take the fund that the other creditors could not touch, and leave to these the other fund unimpaired, or no more impaired than would be necessary to complete the satisfaction due to the two creditors. There is no doubt about this equitable principle; and seeing that the debtor's voluntary act invited its application, we feel no hesitation in applying it. It is argued that the debtor's rights under the statute ought not to be construed away. Certainly not, if he leave them where the statute expected to find them. The statute exempted three hundred dollars' worth of his property from levy and sale on the execution of *any* creditor after the 4th of July 1849; but this debtor, by releasing the right to two of his creditors, sought to transfer property to them to the prejudice of other creditors. This was never contemplated by the statute. The system of preference and distribution established by other statutes was not intended to be broken up by the Exemption Law, and we prevent all clashing between the statutes when we annex to the debtor's waiver its natural and legal consequences. It is not for him to make distribution of his estate among judgment-creditors, the law having fixed that. He may, if he will, keep for himself and family the designated portion; but if he will not, it must, like the rest of his estate, take the course the law has prescribed. No man can set up his private will above the law. Declining the legislative bounty, he cannot alter the statutes of distribution.

It is enough to add that, agreeing with the auditor's reasonings in all points, we affirm the decree of the court.