## J. T. HALLMAN v. R. T. HALLMAN.

### ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 6, 1889—Decided February 25, 1889.

1. In the distribution to liens of the proceeds of a sheriff's sale, a waiver as to any lien will enure to the benefit of all prior liens, on the principle that a debtor cannot alter the precedence settled by law: Bowyer's App., 21 Pa. 210; Garrett's App., 32 Pa. 160; Shelly's App., 36 Pa. 373.

2. A waiver as to any lien will enure to the benefit of subsequent liens, so far as to compel the waiver creditor to resort first to the exempted fund, on the principle of the equity of creditors having one and two funds respectively, under their control: Johnston & Sutton's App., 25 Pa. 116.

3. But a waiver will not enure to the benefit of subsequent liens, beyond its own amount; so that if the waiver judgment is less than $300, the balance will go to the debtor claiming the exemption, on the broad ground that men may do what they will with their own, provided they do not contravene the settled rules of law, or impair the rights of others.

4. Bowyer's App., 21 Pa. 210; Johnston & Sutton's App., 25 Pa. 116; Garrett's App., 32 Pa. 160; McAfoose's App., 32 Pa. 276; Shelly's App., 36 Pa. 373; Pittman's App., 48 Pa. 315, and Jimison's App., 13 W. N. 25, considered, and finally summed up in the foregoing rules.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 161 July Term 1888, Sup. Ct.; court below, No. 100 December Term 1887, C. P.

On June 2, 1884, a judgment was entered in favor of Reuben T. Hallman against James T. Hallman for $600, subsequently marked to the use, inter alia, of Henry Freyer. On December 1, 1887, a fieri facias was issued from the judgment and all the

defendant's property, real and personal, was levied upon. The personal property was appraised at $6 and set aside to the debtor under the exemption law. On December 17th, a venditioni exponas issued, upon which the real estate was sold at $700. In the distribution of the proceeds of the sheriff's sale, a case stated was agreed upon and submitted, wherein Reuben T. Hallman, for use, etc., was plaintiff, and James T. Hallman, defendant, and which was as follows, to wit:

On February 23, 1888, the real estate of said defendant, James T. Hallman (all his personal property amounting to only $6, being appraised to him on account of his claim under the debtor's exemption act), was duly sold at sheriff's sale for $700.

Two judgments, unpaid and unsatisfied of record, were the only two liens against said premises at the time of the sheriff's sale, viz.:

No. 1, for about $70, the first lien, containing a waiver of exemption, held by Wm. F. Hallman, on which execution had not been issued.

No. 2, for $660, the second lien, without a waiver of exemption, held by the said Henry Freyer, execution plaintiff and sheriff's vendee.

James T. Hallman is the defendant in both judgments.

The defendant in the execution in due time and form of law, claimed out of the proceeds of the sale, against said execution, the balance of $294 under the $300 exemption act. The appraisers appointed under said act duly determined against a division of said real estate and valued the same at $975.

If the court be of opinion that said defendant's claim under said exemption law cannot prevail against said execution in the distribution of the proceeds of said sale, then judgment to be entered for the plaintiff; but if it can do so, then judgment to be entered for the defendant.

The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.

On June 4, 1888, after argument, the court, WEAND, J., filed the following opinion and decree:

The question raised by this record is, whether a waiver of

exemption in a judgment which is the first lien on real estate, the proceeds of which is in court for distribution, enures to the benefit of a second judgment having no waiver, so that the defendant can get no part of the $300 claim, although the first lien is less than that amount. It is rather a singular fact that no decision of the Supreme Court of this state clearly decides this point so as to leave it free from difficulty.

The fund amounts to $700, and if we distribute it under the principles laid down in Shelly's App., 36 Pa. 373; Thomas's App., 69 Pa. 120; Pittman's App., 48 Pa. 315, and other kindred cases, we would first have to set apart $300 for the debtor, from which would have to be deducted the amount of the first judgment, $70, and give the defendant the difference, the balance of the above fund going to the second judgment. In this way the defendant gets his exemption, less the amount of the judgment in which he has waived it. In Jimison's App., 13 W. N. 25; s. c. 1 Chest. Co. R. 571, the per curiam opinion reads: " Had the sale been on execution by the sheriff, it is well settled the appellant (the debtor) could not have claimed $300 out of the proceeds, to the injury of the other lien creditors. Among creditors having existing liens on the same property, the law, not the will of the debtor, regulates the priority of liens. Having waived the right of his exemption in the one lien, the appellant cannot claim it out of the same land to the injury of the other lien." In that case, the waiver was contained in the first judgment, and the sale was made by an assignee for the benefit of creditors, on order of court.

This language is so general as to warrant a belief that the Supreme Court meant it to cover the point in controversy here and to carry into effect the words used by Chief Justice BLACK in Bowyer's App., 21 Pa. 210: "He must make his claim, if he makes it at all, in good faith, to carry out the very purpose of the law, and no other; all transfers and all waivers of his right, whether express or implied, enure to the benefit of his creditors in the proper order of their liens. Whatever he does not claim for himself or his family, he leaves in the general fund under the control of the court, to be distributed among those who are legally entitled to it; and such distribution is not to be regulated by any wish of his, no matter in

what form he may choose to express it." Judge FUTHEY, a
very respectable authority, adopted this view of the decision,
when in the case of Taylor v. Webb, 2 Chest. Co. R. 16, he
ruled, "that a waiver of exemption in a judgment which is a
first lien enures to the benefit of subsequent lien creditors."
Whilst the question is still not free from doubt, we incline to
the belief that these two cases rule it in favor of the second
lien creditor, to the exclusion of the defendant to receive any
part of the funds.

And now June 4, 1888, judgment is directed to be entered
for the plaintiff with costs.

An exception having been sealed for the defendant, he there-
upon took this writ and assigned as error the order entering
judgment upon the case stated in favor of the plaintiff, and in
not entering judgment in favor of the defendant.

*Mr. William F. Dannehower*, for the plaintiff in error:

Under the application of the equitable doctrine of subroga-
tion and, as the court below admits, under the rulings of this
court in Shelly's App., 36 Pa. 373; Pittman's App., 48 Pa. 315,
and subsequent cognate cases, the effect of the debtor's con-
joint waiver and claim of exemption, is to divide the fund for
distribution into two parts, one belonging to the debtor and
the other to his judgment creditors generally. But in conse-
quence of his waiver to the senior creditor, the debtor's exempt
fund is liable to the claim of his waiver creditor, to which the
latter must first resort for payment. And where the exempt
fund is equal to or less than the claim of the waiver creditor,
the debtor gets nothing: Pittman's App., supra; Jimison's
App., 13 W. N. 25. When the exempt fund is greater than
the claim of the waiver creditor, what becomes of the surplus?

1. When, subsequent to the first lien containing a waiver,
there are other liens, in some of which there are express or im-
plied waivers of exemption, and in others there are none, the
surplus does not go to the debtor, but falls into the fund be-
longing to the creditors generally: Shelly's App., 36 Pa. 373;
Bowyer's App., 21 Pa. 210. But where there is no waiver in
the liens subsequent to the first judgment with a waiver, on

one or all of which sale is made, and exemption was properly demanded and appraisement had, this court has never directly decided whether the surplus belongs to the debtor or to the subsequent creditor or creditors in the order of their priority. That is the case at bar.

2. The debtor in this case does not change the position in which the law places him. He does not disturb the law relating to priority of liens or the law prohibiting preferences in assignments. He makes his claim in due form and against the instrument of sale. He makes no concession to his execution creditor; nor does he place that creditor in a worse position than if no exemption had been waived. He has an equity as strong as the creditors'. To deprive the debtor of the surplus contended for is in effect saying: "You cannot, for the best reason in the world, waive your exemption in a judgment for $5, when you may have $305 worth of property, without striking down the beneficence held out by the exemption act, and stripping yourself and family of all in favor of subsequent creditors to whom you have waived nothing." The following cases sufficiently indicate the surplus of the fund should be distributed to the debtor: Shelly's App., 36 Pa. 373; Hill v. Johnston, 29 Pa. 362; G. & B. Sewing M. Co. v. Gruber, 2 Pears. 288; Thomas's App., 69 Pa. 120.

*Mr. Louis M. Childs* (with him *Mr. Montgomery Evans*), for the defendant in error:

The learned judge of the court below cites in his opinion the only cases which directly rule the case at bar: Jimison's App., 13 W. N. 25, and Taylor v. Webb, 2 Chest. Co. R. 16. All the considerations contained in the conclusion of the defendant's argument, respecting the execution, defendant's equities, and the beneficent purposes of the exemption laws, have doubtless been urged upon the court in previous cases, and we respectfully submit that the only conclusions which can be logically drawn from the adjudications upon this subject are those so broadly stated in the later cases, to wit: "'That the debtor having waived the right of his exemption in one lien, he cannot claim it out of the same land to the injury of other liens," and that the court below committed no error.

OPINION, MR. JUSTICE MITCHELL:

The precise point involved in the present case is, whether a waiver of the debtor's exemption under the act of 1849, in favor of a lien creditor whose claim is less than $300, enures to the benefit of junior creditors, so as to prevent the debtor from claiming the balance of the exemption after the satisfaction of the senior lien. A perusal of the cases amply justifies the remark of the learned judge below that the question is not free from difficulty.

In Bowyer's App., 21 Pa. 210, it was decided that the exemption could not be assigned to or waived in favor of a junior lien creditor, while there were prior liens against which it could be claimed. The case was decided in 1853, when the act of assembly was but four years old, and the whole subject was new. The grounds of the decision are not clearly set out, though the opinion was written by that eminent master of the English language, Chief Justice BLACK. He seems disposed to regard the exemption as a dangerous novelty, likely to be used as an instrument of fraud, and to treat it as a gift of the law for the benefit of the debtor's family, to be claimed as a whole for that purpose strictly, or not at all; and he expressly excludes from the decision, the question whether a prospective waiver in the instrument evidencing the debt, would be binding if the debtor should, notwithstanding it, afterwards claim the exemption. The germ of the rule finally adopted was, however, contained in the following passage: " Whatever he does not claim for himself and his family he leaves in the general fund, under control of the court, to be distributed among those who are legally entitled to it; and such distribution is not to be regulated by any wish of his, no matter in what form he may choose to express it." This passage is the starting point in the long line of cases on the subject.

The next case took a somewhat different turn. In Johnston & Sutton's App., 25 Pa. 116, the court below following, as it thought, Bowyer's Appeal, treated a waiver in favor of any creditor as a complete abandonment of the debtor's claim and made distribution of the fund in the ordinary way, as if no exemption had been claimed. This court, however, reversed the judgment and distributed the fund (which was less than $300), first, to a debt contracted before the act of 1849;

secondly, to the judgment of appellants on which there was a
waiver, and the balance to the defendant, in disregard of all
other liens.   The report is extremely defective, and I have
taken the schedule of distribution, approved by this court,
from the syllabus, as more in accordance with the opinion than
the statement of facts, which would indicate that the auditor
disregarded the waiver entirely, and awarded the whole balance
to the defendant, after payment of the debt contracted before
1849.   It nowhere appears with certainty whether the appel-
lants' judgment on which there was a waiver was the senior
or junior lien; but I infer that it was the senior, both from
the way in which it is set out in the statement of facts, and
because, otherwise, the court could hardly have failed to
notice and remark upon this part of the ruling in Bowyer's
Appeal.   The fund, says Chief Justice LEWIS, must be paid
to defendant, "unless some of the creditors can show a better
claim to it . . . . . Cowden's judgment was for a debt con-
tracted before the exemption act took effect.   It is therefore
saved from its operation, and is entitled to be paid out of the
money raised.   The residue of the money belongs to the
debtor, unless he has deprived himself of it by his own act.
He has done so, to the extent of the judgment of Johnston &
Sutton . . . . . That debt must therefore be paid out of the
fund.   These are the only claims upon the fund superior to
the right of the debtor under the exemption law.   After satis-
fying them, the residue of the money should be paid to the
defendant in the execution.   There is no difficulty whatever
in arriving at this conclusion.   Nothing stands in the way of
it, except the principle supposed to have been adopted in
Bowyer's Appeal."   He then proceeds to explain that all that
was really decided in that case was, that the claim of exemp-
tion had been made too late, and there being no exemption
the liens took their regular order of precedence, without
reference to any waiver.   If the waiver was, as I suppose, on
the senior judgment, this case decided the exact point raised
in the present, and, except so far as discredited by subsequent
criticisms, is authoritative upon it.

Next in time came Garrett's App., 32 Pa. 160, reiterating the
rule of Bowyer's Appeal that a waiver on a junior lien enures
to the benefit of the senior, and applying it to executions

actually levied on personal property; and McAfoose's App., 32 Pa. 276, decided at the same term, and in direct conflict. In the latter case, the fund was $300, the first lien, Kenly's, for $71, the second, two judgments entered on the same day, Arnold's for $391 with waiver, and Mechling's for $44 without waiver, but on a debt contracted before the act of 1849. As against the first, or Kenly's judgment, the debtor claimed his exemption, but there was a question whether the claim was made in time. This court held that it was, allowed the exemption as against Kenly and distributed the fund pro rata between the two junior judgments. "The first question," says STRONG, J., "is whether, as against Sarah Kenly, under whose execution the property was sold, McAfoose, the debtor, is entitled to take out of court three hundred dollars, in pursuance of the act of April 9, 1849." He then enters into an examination of the status of a claim of exemption made on a fieri facias levied on land, as to a fund raised under an alias fieri facias and venditioni exponas, and continues: "The demand of appraisement on the fieri facias was a sufficient compliance by McAfoose with the conditions of the act of 1849. It follows, that she (Kenly) has no claim upon the fund in court as against him, and as the proceeds of the sale do not exceed $300 she is out of the list of legitimate distributees. The litigants are thus reduced to the debtor, and to Arnold, and Mechling"—the junior judgment creditors. Bowyer's Appeal was not noticed at all, nor does it appear to have been cited, and we might consider that the court regarded it as overruled by Johnston & Sutton's Appeal, were it not for Garrett's Appeal in the same volume. As it is, we must suppose that in the burden of the conflict over the status of the claim on the original fieri facias, the effect of the waiver on the junior liens, under Bowyer's Appeal, was lost sight of by court as well as counsel. In Laucks's App., 44 Pa. 396, THOMPSON, J., says, "McAfoose's Appeal has not the slightest bearing on this doctrine. All that was decided there, was that when one claimed the exemption on a fieri facias he was not obliged to re-assert it on an alias vend. ex." No doubt this is all that was intended to be decided, and, for all beyond this, the case must be treated as an accidental departure from the line of authorities.

The next case in chronological order is Shelly's App., 36 Pa.

373, and the elaborate treatment that the subject received from Justice WOODWARD, indicates that it was not yet considered settled, either in the judicial or the general professional mind. There was a first lien with a waiver, several subsequent liens · without waiver, and a last lien with a waiver. The first and last liens, on which there were waivers, amounted to more than the $300 exemption. The court did not refer to this fact specially, but held, following Bowyer's Appeal, that the waiver on the last judgment enured to the benefit of all the prior judgments without waiver. Several grounds for the decision were discussed at length by Justice WOODWARD, and of some of them it is enough to say that they have not been found sufficiently strong to be relied upon in subsequent cases. But the rule announced was finally rested on two principles: first, that as to the prior judgments without waiver, the law gave them a certain precedence at the time of their entry, which the debtor could not take away, by a waiver or any other act, in favor of a subsequent creditor; and, secondly, that as to the prior judgment with waiver, it had a grasp on both funds, the exempt and the unexempt, and the subsequent creditors had an equity to compel its payment out of the exempted fund which they could not reach. In the course of the opinion Justice WOODWARD refers disparagingly to Johnston & Sutton's Appeal, as in conflict with Bowyer's Appeal: see pp. 380, 381; and in Thomas's App., 69 Pa. 121, Justice AGNEW also speaks of Johnston & Sutton's Appeal as being overruled by Shelly's Appeal. The opinions in these cases do certainly show a wide divergence of views between the judges who delivered them, upon the general subject of exemption and waiver, but critically examined by the facts and the ratio decidendi finally adopted, the cases are not really in conflict. The senior judgment with waiver, being paid out of the exempted fund, the balance of the $300 may go to the debtor, without disturbing the regular order of precedence among the liens, or disregarding the equity of the later creditors to have the first paid out of the exempted fund. Both Bowyer's Appeal and Johnston & Sutton's Appeal may therefore stand harmoniously as authoritative precedents in their respective conditions of facts. And that this was really so held, though the distinction is not definitely pointed out, is shown by Pittman's App., 48 Pa. 315. In that case the first judg-

ment was before the act of 1849, and there was a waiver on the second and fourth judgments, but none on the third, fifth, or later ones. The auditor held that the first was unaffected in any way by the act of 1849, and must first come out of the gross fund. He then found that the waiver in the fourth enured to the benefit of the third, and proceeded : "Therefore the third and fourth judgments had an advantage over subsequent judgments (assuming that a waiver in a judgment does not affect the defendant's right in subsequent judgments), and the application of a well-established principle of equity would require the plaintiffs in these judgments to first exhaust the fund that cannot be reached by the others." In affirming the judgment, Chief Justice WOODWARD said, "the auditor applies the principles of law so correctly that we have little more to do than to approve the distribution."

Shelly's Appeal settled the law as to the effect of a waiver upon prior judgments, and has been uniformly followed : Laucks's App., 44 Pa. 395; Pittman's App., 48 Pa. 315; Thomas's App., 69 Pa. 120 ; Jimison's App., 13 W. N. 25.

The last named case, Jimison's Appeal, requires examination, as it was chiefly upon its supposed authority that FUTHEY, J., decided Taylor v. Webb, 2 Chester Co. Rep. 16, which the learned judge below followed in the present case. The fund was raised by an assignee's sale under the act of February 17, 1876. The first lien was a judgment for $300 with waiver, and there were later judgments without waiver. In assigning his land for the benefit of his creditors, the debtor had reserved $300 exemption for himself, and the assignee's account claimed credit for that amount paid the assignor. The court disallowed the credit, and held that the $300 exemption must go to pay the first judgment, in relief of the junior judgments (see opinion in Jameson's Est., 1 Chester Co. Rep. 49), and this was affirmed on appeal. The syllabus in 1 Chester Co. Rep. is too broad, and some of the expressions in the opinion of this court seem to be equally general, but read in connection with the facts, this case is but the ordinary application of the rule established by Shelly's appeal.

This rule being thus conceded, we have still the consideration of the effect of a waiver on subsequent judgments. None of the cases, except Johnston & Sutton's Appeal, raised this

question, and, notwithstanding the criticisms made upon it, that case has never been overruled on its condition of facts. We are of opinion that it was well decided, and rests on sound reason. A debtor may not alter the established priority of liens, nor deprive a later creditor of his equity to have senior liens paid out of a fund that they can reach, but he cannot; but short of those results, there is no good reason why he may not waive exemption in favor of one creditor, or more especially in favor of a small debt. "A waiver of the exemption in favor of one creditor is not ipso facto a fraud on others. . . . . There is therefore no good reason for striking down the debtor's exemption in favor of a creditor to whom he has made no concession, and in a case involving no question of distribution:" AGNEW, J., in Thomas's App., 69 Pa. 121. In the present case the waiver was on a judgment for only $70. It may be that a waiver was the debtor's only means of getting that particular loan, and he might well afford to waive his privilege to an extent that would still leave him more than three fourths of his exemption fund. No other creditor is postponed thereby, or the fund for the payment of his debt lessened. The preferred creditor and the debtor together get only what the debtor alone would have got without the waiver. Why should the arrangement be set aside in favor of one who is in no wise injured by it, contrary to the real intent of the parties, and contrary also to the general spirit of the statute? In Shelly's Appeal, Justice WOODWARD inclines to regret that the court had not denied the capacity of the debtor to waive the exemption at all (as has been held in some states), but without going that far, we can certainly say with reason that we will not compel him to waive the whole when he only meant to waive a part, and when no one has been injured by his act.

The result of this somewhat prolonged discussion of the authorities may be summed up finally in the following rules, with which no authority carefully examined on its facts is in conflict, and which are believed to rest on sound reasoning and settled principles of law:

First; a waiver as to any lien will enure to the benefit of all prior liens; on the principle that a debtor cannot alter the precedence settled by law.

Secondly; a waiver as to any lien will enure to the benefit

Statement of Facts.

of subsequent liens, so far as to compel the waiver-creditor to resort first to the exempted fund; on the principle of the equity of creditors having one and two funds, respectively, under their control.

Thirdly; a waiver will not enure to the benefit of subsequent liens, beyond its own amount; so that if the waiver-judgment is less than $300, the balance will go to the debtor claiming his exemption, and this on the broad ground that men may do what they will with their own, provided they do not contravene the settled rules of law, or impair the rights of others.

In accordance with the views herein expressed, the judgment is reversed, and now judgment is entered on the case stated for defendant, with costs, and the record remitted.

