DANIEL MCARTHUR *vs.* JOHN MARTIN and others.

June 27, 1876.

Principal and Surety—Payment by Surety—Subrogation.—So soon as a surety pays the debt of his principal there arises in his favor an equity to have the securities held by the creditor for his debt turned over to him, and to avail himself of them as fully as the creditor could have done. For the purpose of indemnity he is entitled to be subrogated to all the rights, remedies and securities of the creditor, and entitled to enforce all his liens, priorities and means of payment, as against the principal. Payment by a surety, although it extinguishes the remedy and discharges the security as respects the creditor, does not have that effect as between the surety and his principal; as between the latter, it is in the nature of a purchase by the surety from the creditor. It operates in equity as an assignment of the debt and securities. The right of subrogation and the equitable assignment relate to the date of the suretyship, as against the principal and those claiming under him.

Same—Surety Presumed to Intend to Keep Security Alive, if in His Interest.— When the question is whether the acts of a party have had the effect to

keep a security on foot, the court, in the absence of proof to the contrary, will presume that they were done with that intention which is most for the interest of the party doing them.

**Marshalling of Securities—Homestead.**—Where A holds security upon two tracts of land, one of which is a homestead, and B holds security only upon the tract not a homestead, A will not be compelled to resort to the homestead tract first, in order to leave the other tract, as far as may be, to B.

Appeal by defendants from a judgment of the district court for Olmsted county, where the action was tried before *Mitchell*, J., without a jury.

*Chas. C. Willson*, for appellants.

*Lloyd Barber*, for respondent.

BERRY, J. The important facts found by the court below in this case are these :

In December, 1866, the defendant John Martin, being owner of the north-east quarter of section 17, town 108, range 13, conveyed the west half thereof to the plaintiff by warranty deed. In September, 1868, Martin purchased of Quinlan the south half of the north-west quarter of said section 17, subject to a mortgage to Aiken. In October, 1868, Martin and the plaintiff borrowed of Tew $1,975, to secure which they gave their joint note, and a joint mortgage of the above-described three eighty-acre tracts, with covenants of warranty. Of the sum borrowed plaintiff received $440, and Martin the balance, and, as between them, it was agreed that the plaintiff should pay, of the $1,975, only $440 and interest, and that Martin should pay the remainder. In 1869 Martin, for a valuable consideration moving from plaintiff, agreed to assume and pay the whole of the Tew mortgage. Upon Martin's failure to pay, Tew, at foreclosure sale, sold the three eighties, as one tract, to R. W. Chadbourn, for $2,169.77, which was the amount due on the mortgage, with costs of sale.

In March, 1873, John Martin conveyed the east half of the north-east quarter of section 17 aforesaid to Thomas Martin, for $1,125. Of this sum $625 was applied in part-payment of the Tew and Aiken mortgages. The tract thus

conveyed was the homestead of John Martin and his family, and by them occupied as such from 1865 until the sale to Thomas Martin.

On February 1, 1869, Aiken, upon foreclosure, sold the premises mortgaged to him, to Dowd, for $985.50, being the amount of the mortgage debt and costs.

On January 11, 1870, John Martin and C. H. Chadbourn entered into an agreement, under which Chadbourn advanced the money to pay off Dowd, taking from him a quitclaim deed of the mortgaged premises and an assignment to himself of the certificate of sale " absolute in form, but with a verbal understanding and agreement with John Martin that it was to stand simply as security for the money thus advanced, and that he would convey to John Martin," upon repayment of the amount advanced and interest. Martin and Chadbourn disagreeing, the former brought an action against the latter for the purpose of settling their respective rights under the agreement of January 11th. The result was that, on December 16, 1874, final judgment was entered up, adjudging; among other things, that there was due to Chadbourn from Martin, for balance of money advanced to pay Dowd, the sum of $400 ; that Chadbourn held the legal title to the Dowd land simply as security for that sum ; that John Martin was the equitable owner thereof, subject to Chadbourn's said claim ; and, also, further adjudging that, upon Martin's paying Chadbourn, on or before June 1, 1875, $400, with 12 per cent. interest from December 16, 1874, Chadbourn should convey said land to Martin ; but that, if Martin failed to make the payment on or before the time aforesaid, he should be forever barred of all estate or equity in said land.

While the litigation between John Martin and C. H. Chadbourn was pending, John Martin being insolvent and unable to redeem, the plaintiff, for the purpose of saving his eighty, and Thomas Martin, for the purpose of saving his eighty, on May 6, 1874, united in redeeming from R. W. Chad-

bourn (the purchaser at the foreclosure sale upon the Tew mortgage) the three eighty-acre tracts before described. For that purpose they paid R. W. Chadbourn $2,360, of which Thomas Martin furnished $780 and the plaintiff the balance, to wit $1,580, and took a certificate of redemption of the three eighties running to themselves.

The defendants in this action, other than John Martin and C. H. Chadbourn, are judgment creditors of John Martin, whose judgments were docketed at different dates between December 18, 1869, and October 18, 1871. Upon these judgments executions were, on December 11, 1874, issued and levied upon the estate of John Martin in the Dowd land, viz., the south half of the north-west quarter of section 17 aforesaid.

On December 19, 1874, plaintiff commenced this action, asking, among other things, to be subrogated in place of R. W. Chadbourn as to the south half of the north-west quarter aforesaid, (the Quinlan eighty,) in order that he might reimburse himself for the advance of $1,580, which he was compelled to make for John Martin in order to save his own land from the sale upon the Tew mortgage.

The court further finds that John Martin is wholly insolvent, and has no property liable to execution, unless it be his interest in the south half of the north-west quarter aforesaid, and that each of the three eighties before mentioned is worth $2,000.

As conclusions of law, the court finds that plaintiff is entitled to be subrogated to the rights of the purchaser at the foreclosure sale, upon the Tew mortgage, to the extent of $1,556.65, and interest thereon at 7 per cent. from May 6, 1874; to have such amount adjudged a lien upon the Quinlan eighty as of October 29, 1868, subject to the lien of C. H. Chadbourn; to be adjudged to have the right to redeem said premises from C. H. Chadbourn, in accordance with the terms of the judgment rendered in the action brought by John Martin against Chadbourn; to have a lien

on the premises for the sum paid on such redemption; to
have his liens for both of said sums adjudged prior to any
lien, right, or estate of defendants upon, to, or in said
premises, (the lien of C. H. Chadbourn excepted,) and to
have the premises sold, under the direction of the court,
to pay said sums, interest, and costs. Judgment was
entered accordingly.

Under the agreement between the plaintiff and John
Martin as to the payment of the Tew mortgage debt by the
latter, that debt became, as between them, wholly the debt
of Martin—the plaintiff holding, with reference to it, the
relation of surety, and John Martin that of principal. In
order to redeem his own property, which was mortgaged to
secure such debt, plaintiff was obliged to pay $1,580. In
thus redeeming his property, he at the same time redeemed
from the same mortgage the property of John Martin, his
principal—the Quinlan eighty. So soon as the surety pays
the debt of his principal there arises in his favor an equity
to have the securities held by the creditor for his debt
turned over to him, and to avail himself of them as fully as
the creditor could have done. For the purpose of indem-
nity, he is entitled to be subrogated to all the rights,
remedies, and securities of the creditor, and entitled to
enforce all his liens, priorities, and means of payment as
against the principal. Payment by a surety, although it
extinguishes the remedy and discharges the security as
respects the creditor, does not have that effect as between
the surety and his principal. As between the latter, it is in
the nature of a purchase by the surety from the creditor.
It operates in equity as an assignment of the debt and
securities. The right of subrogation and the equitable
assignment relate to the date of the suretyship, as against
the principal and those claiming under him. In the case
at bar, therefore, plaintiff's right (if any) under the doc-
trine of subrogation antedated and took precedence of the
lien (if any) of the judgment creditors, defendants, since

plaintiff stands in the place of Tew, and the defendants mentioned claim under John Martin, by virtue of judgment liens accruing subsequently to the lien of the Tew mortgage.

It is claimed that, at the time of the plaintiff's redemption, R. W. Chadbourn had no interest in, or claim upon, the Quinlan eighty, the foreclosure of the Aiken mortgage and the expiration of the redemption having vested the title to that tract in C. H. Chadbourn, the assignee of the certificate of sale. But, as to this, it is to be observed that, under the arrangement between C. H. Chadbourn and John Martin, the assignment of the certificate to the former was in trust for the latter. Chadbourn took and held the certificate as security for the money advanced for Martin. As Martin had, therefore, both at the time of the foreclosure sale upon the Tew mortgage and at the time of plaintiff's redemption from such sale, a right and interest in the Quinlan eighty, there is no reason why that right and interest did not pass to R. W. Chadbourn, subject, of course, to the effect of a redemption.

In the application of the rule of subrogation in favor of a surety, there is, then, no reason why the plaintiff is not entitled to the benefit of the security which Tew held upon the Quinlan eighty, and that, too, in precedence over the judgment creditors, defendants, unless this result is prevented by some special fact in the case.

The defendants claim that it is prevented by the fact that, as by the certificate of redemption (which was duly recorded) it appears that the plaintiff assumed to redeem as mortgagor, the effect of his redemption was (under the provisions of Gen. St. *c.* 81, § 15) to annul the sale and extinguish the lien of the Tew mortgage. As respected his own eighty, (the west half of the north-east quarter,) the plaintiff certainly was a mortgagor. As to that tract, the redemption undoubtedly operated, under the statute, to annul the sale. As to the other two eighties, the plaintiff, although he joined in the mortgage, was not a mortgagor

in fact, since he had no title nor interest of any kind in either, and of this fact the records of title were notice. As to those two eighties, then, it is not necessary to treat his redemption as that of a mortgagor, annulling the sale. The statement of the certificate, that he redeemed as mortgagor, may properly be taken as applying only to the eighty of which he was owner, and which, as matters stood, he could redeem only by redeeming the entire premises mortgaged. As respects the two eighties which he did not own, there is no reason (nothing appearing to the contrary) why his redemption should not have the effect of subrogating him, or putting him in a position to be subrogated, to Tew's rights, as against John Martin and persons claiming under him, like the judgment creditors, defendants.

When the question is whether the acts of a party have had the effect to keep a security on foot, the court, in the absence of proof to the contrary, will presume that they were done with that intention which is most for the interest of the party doing them. *Davis* v. *Pierce*, 10 Minn. 376 ; *First Div. St. Paul & Pacific R. Co.* v. *Parcher*, 14 Minn. 297 ; *Horton* v. *Maffitt*, Id. 289. Under this rule it would in this case be presumed that the plaintiff intended, by his redemption, to become subrogated to Tew's rights against Martin as respected the two eighties, since that intention would manifestly be most for plaintiff's interest.

It is further claimed by defendants that, as plaintiff's equity (if any) extends to the eighty owned by Thomas Martin, while the lien of the judgment creditors extends only to the Quinlan eighty, (the Thomas Martin eighty having been an exempt homestead,) the plaintiff ought to be compelled to resort to the Thomas Martin eighty first, so as to leave the other, as far as may be, to the judgment creditors. But, as is well remarked by the court below, homestead exemptions are favored by the courts ; and, as the application of the rule contended for in reference to the marshalling of assets would be but an indirect method of

subjecting a homestead to the payment of debts, a court of equity would not permit it to be applied in favor of the judgment creditors in this case.

The point that Thomas Martin should have been made a party to this action is well disposed of by the court below, upon the ground that no objection for any defect in that respect is taken in the answer.

For these reasons, which are substantially the same assigned by the court below, we are of opinion that the judgment appealed from should be affirmed.

Ordered accordingly.