On December 19th, 1913, the defendant, William A. Steele, owned the south half of section 21, township 147, range 67, Foster county, North Dakota. On that date he, together with his wife, the defendant, Belinda Steele, executed and delivered a mortgage upon these premises to the Minneapolis Trust Company. This instrument was duly recorded. At the date of the execution and delivery of this mortgage, and thereafter until about December 24th, 1924, the Steeles occupied the southeast quarter of section 21 as a homestead. In November, 1921, William A. Steele executed two certain mortgages on the southwest quarter of section 21, and in November, 1922, he executed and delivered another mortgage on the southwest quarter of section 21. These instruments each recited that the land mortgaged was free of encumbrances "except mortgages of record." The plaintiff now is, and since June 1923, has been, the owner, by assignment or otherwise, of the three mortgages last above described. The amount due and unpaid on these three several mortgages was, at the time of the trial, approximately $7,000. On July 12th, 1923, the plaintiff became the owner, by assignment, of the first mortgage executed by Steele and his wife on December 19th, 1913. At the time of the trial there was due and unpaid on this mortgage the sum of about $3,600. In April, 1924, William A. Steele and Belinda Steele executed and delivered a warranty deed of the southeast quarter of section 21, the homestead quarter, *Page 689 
to the defendant, the Foster County State Bank. This instrument, in form a warranty deed, was really executed and delivered as a mortgage. The consideration recited is $1, and the instrument further recites: "That the premises are free of encumbrance except a mortgage for $4,000 on the land herein conveyed and the southwest quarter of section 21-147-67." In fact, this deed was executed and delivered as security for the payment of past due indebtedness of some $4,700, due to various of Steele's creditors. Steele and his wife abandoned the homestead premises in December, 1924. In October, 1924, the plaintiff began the instant action to foreclose the mortgage of December 19th, 1913. William A. Steele, Belinda Steele, and the Foster County State Bank were named in the foreclosure action as parties defendant and were duly served. The Steeles defaulted. The Foster County State Bank, answering, set up the facts with reference to its claims and the claims of the plaintiff, and prayed judgment that if the foreclosure be ordered, as demanded by the plaintiff in its complaint, that the mortgaged premises be sold in separate parcels, and that the plaintiff be required to satisfy the mortgage debt out of the proceeds of such sale from each parcel sold in the proportion that the selling price of each bore to the full amount of the mortgage debt. The plaintiff, replying, set out its ownership of the first mortgage on the half section and of the three junior mortgages on the southwest quarter, prayed judgment as demanded in its complaint and that the mortgaged premises be sold in the inverse order of the encumbrances on the separate tracts, and that the southeast quarter, being subject to the youngest and fewest subordinate liens, be sold first and the proceeds of such sale applied upon the first mortgage indebtedness, and if the same were not satisfied thereby that the southwest quarter then be sold. At the time of the trial of the action the southeast quarter was worth $4,500, and the southwest quarter, $3,000. Judgment was ordered for the plaintiff as prayed in the complaint and the premises were ordered sold as demanded by the plaintiff in its reply. Judgment was entered accordingly on April 28th, 1925. A special execution was immediately issued and put into the hands of the sheriff of Foster county. He proceeded to execute the same and sold the property on June 1st, 1925, first selling the southeast quarter for $3,600, and then selling the southwest quarter for $162.55. Plaintiff was the purchaser in each case. The amount due on the *Page 690 
judgment at the date of sale with costs was $3,762.55, the amount realized at the sale. Thereafter, and on June 3d the sale was approved and confirmed by the district court. On June 23d the defendant perfected the instant appeal to this court demanding a trial de novo.
This controversy is in fact between junior lien holders on two different parcels of land to determine the manner in which the senior lien holder having a lien on both parcels shall be required to resort to his security in order to satisfy his claim. It so happens that in this particular case the junior lien holder on the one parcel is also the holder of the superior lien on both. But, as we view it, this can make no difference, either as to the power of a court of equity to command the holder of the superior lien as to how it shall resort to its security, as affecting the holder's rights with reference to its security, or as enhancing or diminishing the rights of either of the junior lien holders. The plaintiff, as the holder of the first mortgage and as the junior lien holder on one of the parcels, contends that as the first mortgagee it has the legal right to resort to either parcel of its security, or both, in any manner that it may see fit, and that if it so exercises that right as to be advantageous to itself as junior lien holder on one of the parcels that the defendant, the other junior lien holder, has no right to complain. Plaintiff further contends that in any event, the statute, § 6716, Comp. Laws 1913, determines the order in which the security shall be resorted to and that the judgment of the district court was in accordance with this statutory direction. On the other hand, the defendant insists that at the time the junior liens were created and at the time of the initiation of the instant case, the southeast quarter of section 21 was the homestead of the Steeles; that all of the plaintiff's junior mortgages were given and received subject to the first mortgage, and that under the circumstances as disclosed in this case true equity requires that the several parcels of land shall bear the burden of the first mortgage in proportion to their value.
Section 6716, Comp. Laws 1913, reads as follows:
"Order of resort for payment. When one has a lien upon several things and other persons have subordinate liens upon, or interests in some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself or of injustice to other persons, *Page 691 
must resort to the property in the following order, on the demand of any party interested:
"1. To the things upon which he has an exclusive lien.
"2. To the things which are subject to the fewest subordinate liens.
"3. In like manner inversely to the number of subordinate liens upon the same thing; and,
"4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had:
"(a) To things which have not been transferred since the prior lien was created.
"(b) To the things which have been so transferred without a valuable consideration; and,
"(c) To the things which have been so transferred for a valuable consideration in the inverse order of the transfers."
In the instant case the plaintiff's junior liens on the nonhomestead quarter were prior in point of time to the defendant's lien on the homestead quarter. Plaintiff contends that the court, in ordering the sale of the mortgaged premises in satisfaction of the first mortgage debt and directing that the homestead quarter be first sold, followed the provisions of this statute. The statute is merely an enactment of the equitable rule. See Union Nat. Bank v. Moline, M. S. Co. 7 N.D. 201, 73 N.W. 527; Merchants State Bank v. Tufts, 14 N.D. 238, 116 Am. St. Rep. 682, 103 N.W. 760; Harvison v. Griffin, 32 N.D. 188, 155 N.W. 655; Pom. Eq. Jur., § 1224. The statute, like the rule, has regard to the rights of all who have "interests" in the property involved. Like the rule it applies only where it may do so without risk of loss to the senior lien holder or injustice to other persons. Irvine v. Perry, 119 Cal. 352, 51 P. 544, 949. There is no question here of risk of loss to the plaintiff as senior lien holder. Its security is ample. Its claim must and will be satisfied without risk or inconvenience to it. The question is wholly between the junior lien holders. While the plaintiff's junior liens on the nonhomestead quarter were prior in point of time to the defendant's lien on the homestead quarter, yet at the time that the various liens, both junior and senior, were acquired, the Steeles were occupying the southeast quarter as a homestead. This was also the case when the instant action was begun. As homestead claimants they had an interest in the homestead quarter — an interest *Page 692 
jealously guarded by the law. Had they desired to do so, we think there is no question but that they could have required the plaintiff to resort first to the nonhomestead quarter, even though to have done so would have wholly defeated the rights of the junior lien holder upon that quarter. This would be wholly consistent with the statute above referred to and the equitable rule upon which it was founded. A homestead claimant has such an interest in the property claimed as a homestead as to enable him to invoke the aid of a court of equity to compel a lien holder who has a lien upon both homestead and other property to resort first to the nonexempt property. Such seems to be the generally accept rule. See Nolan v. Nolan, 155 Cal. 476, 132 Am. St. Rep. 99, 101 P. 520, 17 Ann. Cas. 1056, and note; 18 R.C.L. pp. 463, et seq.; 29 C.J. 877, et seq.; Freeman, Executions, § 440. It is true that there are holdings to the contrary based upon the theory that the right to marshall is not available in favor of the debtor as against a creditor, but may be invoked only by those claiming under the debtor. See Miller v. McCarty, 47 Minn. 321, 28 Am. St. Rep. 375, 50 N.W. 235; Searle v. Chapman,121 Mass. 19; White v. Polleys, 20 Wis. 504, 91 Am. Dec. 432; Hallman v. Hallman, 124 Pa. 347, 16 A. 871. We think, however, that the rule more favorable to the homestead claimant is the better one and should be followed in this jurisdiction. We are especially inclined to this holding in view of the fact that this state has adopted a very liberal policy with reference to homestead rights. Civ. Code, chap. 51, Comp. Laws 1913, §§ 5605, 5639.
If the Steeles had applied to the court to require the plaintiff to resort first to the nonhomestead quarter in satisfaction of its mortgage debt they would have been entitled to a judgment ordering that this be done. However, the Steeles have defaulted. They are not in court asking for relief. They have abandoned the homestead. The question thus arises whether under these circumstances the defendant may claim the advantage of position which the Steeles would have been entitled to. There is no question but that had the Steeles sold the homestead, the proceeds of such a sale would have been inviolate against the claims of unsecured creditors. Had they mortgaged the homestead the avails of the mortgage would have been likewise exempt. The plaintiff insists that no consideration passed to the Steeles from the defendant bank at the time the defendant took the deed as security, *Page 693 
and that therefore the defendant is in the same position as any other unsecured creditor. But why should this result follow? If the Steeles had desired to pay the defendant's obligation with the proceeds resulting from a sale of their homestead, they might have done so. If they had mortgaged the homestead to a third person they might have used the fruits of the mortgage to pay such of their unsecured debts as they saw fit to so pay, and no other creditor would have been in position to complain. Why then can the defendant not maintain its contention that under the circumstances it also is entitled to equitable consideration. The defendant does not claim to stand in the shoes of the Steeles, nor does it ask for the rights which they would have been entitled to. It comes into court and asks that that be done which it contends is most equitable. It asks that resort be had to the several parcels of security held by the first mortgagee in the ratio that the value of each parcel bears to the value of the whole. That is to say, since the homestead quarter was worth $4,500, and the nonhomestead quarter, $3,000, that the homestead quarter bear three fifths of the mortgage burden and the nonhomestead quarter, two fifths thereof. After all is not the question here largely one of intention and of knowledge? In determining what is most equitable as between these junior lien holders, must not the court consider the intention and knowledge of the respective parties when the junior mortgages were executed and taken? Surely, it cannot be said that Steele and his wife intended that resort should be first had to the homestead merely because they joined in executing the first mortgage, which covered both the homestead and the nonhomestead quarter. Every inference and presumption is to the contrary. As is said in Freeman on Executions, § 440:
"Homestead laws should be liberally construed, and no intention should be presumed, nor should any interpretation be indulged which is at variance with the natural and obvious purpose of the parties. The claimants, in the absence of any expression of a contrary intention, should be presumed to intend no further peril to their homestead than necessity demands, while he who receives a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead. Hence a mortgage on a homestead and other property may fairly be interpreted as a waiver of the homestead right only so far *Page 694 
as may be necessary to secure the debt; or, in other words, as a stipulation that the homestead may be sold, if the other property proves inadequate to satisfy the mortgagee's demand."
On the one hand, the junior mortgages on the southwest quarter were taken with notice of the first mortgage. In two of these mortgages, the mortgagor, Steele, warranted the premises to be free from encumbrances "except for a first mortgage now or record," and in the third he warranted that the premises were free from all encumbrance, "except a mortgage of $4,000. . . ." So it is to be noted that in those mortgages while reference was made to the first mortgage on the nonhomestead quarter, no reference is made to the fact that such mortgage was also secured on the homestead or any other lands. Mrs. Steele did not join in these junior mortgages, and the mortgagees knew that she did not. They had no reason to believe or to assume that if the first mortgagee were to seek to realize on his security that it was intended that he should resort first to the homestead quarter. On the other hand, when Steele and his wife joined in the execution of the deed to the defendant on the homestead quarter, they likewise made specific reference therein to the first mortgage. They convenanted that it was free of encumbrance "except a mortgage on the land conveyed and the south-west quarter of section 21." They might surrender their homestead if they saw fit to do so. They might surrender such part of it or such interest in it as they saw fit. May it not be presumed that when they, in this deed, made reference to the first mortgage, as they did, that they intended that that mortgage should be satisfied out of the security ratably? At least, is not that presumption more reasonable than that they intended that the homestead should be resorted to first? The defendant, the grantee in the deed, had notice of the first mortgage. It took its lien subject to the first mortgage and expressly stipulated that it did not assume the first mortgage debt. Under these circumstances the defendant asks that the first mortgagee be required to resort to the several parcels of security ratably. Under the circumstances as affecting the plaintiff as a junior lien holder, considering its knowledge and the facts which put it upon notice, it seems to us that plaintiff as a junior lien holder can demand no more than this. Whether it is entitled to such favorable consideration we need not determine. The order and judgment of the district court were *Page 695 
therefore erroneous with respect to the direction that resort should be had first to the homestead quarter.
It appears, however, that in this case the appeal was not perfected until the security had been sold under the judgment and the sale affirmed. The sale was made in accordance with the mandate of the judgment. The homestead property was sold first and realized $3,600. The nonhomestead quarter was then sold for $162.05. The total amount thus realized was the amount required to satisfy the mortgage debt and costs. Plaintiff now contends that since the sale was thus made and confirmed the defendant is entitled to no relief on this appeal; that the purchaser at the sale is entitled to deed regardless of the disposition of the appeal under the provisions of § 7768, Comp. Laws 1913; and that the questions raised in this case are moot. The record discloses, however, that the plaintiff was the purchaser at the sale. So far as now appears plaintiff holds the sheriff's certificate. The values of the different parcels were stipulated on the trial. The amount of the mortgage debt and costs as of the date of the sale is known and determined. The period of redemption has expired. The defendant suffered a substantial injury on account of the manner in which the sale was made. It is entitled to relief by way of redemption, substitution, or restitution. The case is here for trial de novo, but we have no means of knowing what has been done with the certificates of sale, whether they have been assigned, whether deeds have been issued, or redemptions made. It is therefore impossible at this time for us to direct in what manner relief shall be afforded to the defendant. This, however, can be done on further hearing in the district court depending upon the facts as they may be found.
The case will therefore be remanded to the district court for further disposition not inconsistent with this opinion.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and JOHNSON, JJ., concur. *Page 696