BOYCE, Respondent, v. HAWN et al, Appellants, KIMBALL, COMMERCIAL & SAVINGS BANK, Respondent.

(216 N. W. 589.)

(File No. 5789.   Opinion filed December 13, 1927.)

*Brown & Brown,* of Chamberlain, for Appellants.
*E. R. Slifer,* of Chamberlain, for Plaintiff-Respondent.
*Heck & Thorson,* of Kimball, for Defendant-Respondent.

BURCH, J. Plaintiff brought this action to foreclose a $6,000 mortgage dated March 4, 1916, covering a half section of land in Brule county. One quarter section of the mortgaged land was, at the time the mortgage was given and ever since has been, the homestead of the mortgagor, W. W. Hawn, and his family. For convenience we refer to the quarter section not included in the homestead as the N.E.¼, and the other as the homestead. Plaintiff's mortgage was given to one Parker, assigned by him to the Kimball Commercial & Savings Bank, and by it assigned to plaintiff. At the time the mortgage was given, the mortgagor, Hawn, owned the homestead, and his wife owned the N.E.¼. Both joined in the mortgage. In 1918 Hawn died, his wife became administratrix of his estate, and the administration had not been closed when this case was tried, but for the purposes of this opinion the homestead may be treated as the property of the wife, Rosa Hawn, and of the children of deceased, which they have continued to occupy. Rosa Hawn, being the owner of the N.E.¼, on December 17, 1920, gave a second mortgage on that quarter for $5,120 to the Kimball Commercial & Savings Bank. She failed to pay this mortgage, it was foreclosed, and the said bank obtained a sheriff's deed to the land before the commencement of this action. No question is raised as to the validity of the sheriff's deed or the present ownership of the land. Rosa Hawn also gave a second mortgage for $1,250 to the Kimball State Bank covering her one-third interest in the homestead. This

mortgage is unpaid. The homestead claimants ask to have their homestead interest protected in this action by a decree requiring the N.E.¼ to be first sold to satisfy the debt, and that no part of the homestead be sold, except in the event it is necessary to pay a balance remaining. The holder of the sheriff's deed to the N.E.¼, Kimball Commercial & Savings Bank, asks that the homestead be first sold and that no part of the N.E.¼ be sold unless necessary to pay a balance remaining. The trial court found the value of the N.E.¼ at $40 per acre, made no finding as to the value of the homestead, and decreed that the homestead be first sold as prayed for by the Kimball Commercial & Savings Bank. From the judgment, the homestead claimants and the Kimball State Bank appeal.

Plaintiff's right to a foreclosure seems clear, and there is no evidence that he will be prejudiced by a decree prescribing in what order the separate tracts may be sold, so his rights need not be further considered in connection with the dispute between appellants and respondent Kimball Commercial & Savings Bank. Hereafter when we use the word "respondent" we refer to the Kimball Commercial & Savings Bank alone.

The homestead claimants on one side and respondent on the other in their answers invoke one against the other the equitable doctrine of marshaling securities, or the cognate doctrine of equity which compels a mortgagee having a lien on land which has been aliened in separate parcels to satisfy the lien out of the land remaining in the grantor, or, if that be insufficient, to resort to the parcels aliened in the inverse order of their alienation.

██ We will first consider respondent's right to control the order in which the separate parcels may be sold. Respondent is in no sense a creditor. It is the owner by virtue of a sheriff's deed, and any debt originally owing it was satisfied by the foreclosure resulting in the sheriff's deed. Respondent derived title to the N.E.¼ from the sheriff's deed in November, 1922. Appellants derived their title by inheritance in March, 1918. Respondent's mortgage, from which the sheriff's deed was derived, was given in December, 1920, so it is apparent that appellant's title is not only prior and superior to respondent's deed but to the debt for which the mortgage was given. Another reason why the respondent could have no equity superior to the children who inherited two-thirds of the homestead is that the debt was not contracted by their

ancestor, nor was their ancestor respondent's grantor. There is not one principle of the doctrine invoked that supports respondent's right against the children.

Has respondent such right against the widow? Her title to the homestead was derived by inheritance in the same manner as the children's, but she signed the mortgage that is sought to be charged against her property, and contracted the debt from which respondent's title originated. She did not, however, convey title to respondent. Respondent's title resulted from legal proceedings whereby the debt was paid from a sale of the land. By the sale the debt was satisfied, and the widow ought not to be required to pay it again. The land was necessarily sold subject to the first mortgage (and the court so found), and the price so bid was for the equity of redemption, not for the tract free of incumbrance. When respondent bought the equity of redemption, it was under no obligation to pay more than the equity was worth. There is nothing in this case akin to a conveyance free of incumbrance by warranty deed, as was the case in Merchants' National Bank v. Stanton, 55 Minn. 211, 56 N. W. 821, 43 Am. St. Rep. 491, cited by respondent. In that case a distinction is drawn between judicial sales and conveyances by warranty deed. In McArthur v. Martin, 23 Minn. 74, it was held:

"That to apply the rule in reference to marshaling securities in favor of a judgment creditor, who obtains his lien by proceedings in invitum, and not by contract of his debtor, would be but an indirect method of subjecting a homestead to the payment of debts."

If the title resting on the sheriff's deed in the case at bar be considered as arising in contract under a mortgage containing a power of sale, and therefore differing from the lien of a judgment creditor, it cannot be said that the contract contemplated subjecting the homestead to the payment of the debt. The mortgage was a second mortgage subject to the first and no attempt to mortgage the homestead was made. The power of sale gave a right to sell the equity of redemption and no more. To transfer the first mortgage to the homestead would be an indirect method of including the homestead in the second mortgage. A court has no authority to impose upon the homestead a greater burden than has been placed thereon by the parties themselves, or by the law.

Mitchleson v. Smith, 28 Neb. 583, 44 N. W. 871, 26 Am. St. Rep. 357; Marr v. Lewis, 31 Ark. 203, 25 Am. Rep. 553; Dickson v. Chorn, 6 Iowa 19, 71 Am. Dec. 382. Respondent had no right to the decree it obtained against any of the homestead claimants.

Did the homestead claimants have a right to the relief they asked; namely, a sale of the N.E.¼ first for the satisfaction of plaintiff's mortgage to protect their homestead right?

■ Respondent has devoted some space to arguing a provision of plaintiff's mortgage waiving the homestead right. Such provision applies to plaintiff. It does not waive the homestead right as to other creditors not a party to or claiming a right under the mortgage containing the waiver. Plaintiff's mortgage is not in dispute. Nor is there any dispute between the mortgagor and other creditors, but between owners of separate tracts, with priority of title in favor of appellants. But we need not consider the rights of the children as heirs to marshal securities in their favor independent of the homestead character of their land, because the widow can claim only by virtue of her homestead right, which, if sustained, will protect the rights of all the appellants.

It must not be overlooked that respondent took the land burdened with the first mortgage. The equities between a mortgagor and his grantee by warranty deed free of incumbrance are not involved.

At common law, in marshaling assets and securities the interests of the debtor were not considered. But with the growth of an enlightened public policy saving to the debtor certain property and especially a homestead exempt from forced sale on execution, the doctrine was extended by many states to protect the exemptions of the debtor. The justice of saving the debtor's exemptions from forced seizure by the indirect method of marshaling securities is apparent. Extending to him the benefit of the doctrine is necessary to a full enjoyment and protection of such exemptions. When the exemption right is superior to the rights of creditors, must, of course, depend upon the circumstances of the case. The principles governing are well understood in determining the priorities between creditors, and the same principles can be applied in determining the priority of an exemption claim. Where, as in the case at bar, the homestead character of the land, now claimed by the widow and other heirs, was known long before respondent gained an

interest in the N.E.¼, existed when respondent took a second mortgage and when respondent obtained a fee title subject to the first mortgage, the homestead right is superior to respondent's right (if respondent has any right under the terms of its purchase), and appellants are entitled to compel plaintiff to first resort to the N.E.¼ for satisfaction of the mortgage and to sell the homestead only in the event a sale is necessary to pay a balance remaining. The extension of the doctrine to include the protection of the homestead exemptions is discussed and maintained in the following cases: Nolan v. Nolan, 155 Cal. 476, 101 P. 520, 132 Am. St. Rep. 99, 17 Ann Cas. 1056; McCreery v. Schaffer, 26 Neb. 173, 41 N. W. 996; Colby v. Crocker, 17 Kan. 527; Brown v. Cozard, 68 Ill. 178; McArthur v. Martin, 23 Minn. 74; Mitchleson v. Smith, 28 Neb. 583, 44 N. W. 871, 26 Am. St. Rep. 357; White v. Fulghum, 87 Tenn. 281, 10 S. W. 501; Equitable Life Ins. Co. v. Gleason, 62 Iowa 277, 17 N. W. 524; Flowers v. Miller (Ky.) 16 S. W. 705; Wilson v. Patton, 87 N. C. 318.

The judgment and order appealed from are reversed, and the cause remanded, with direction to render judgment in favor of plaintiff for a foreclosure of his mortgage, but protecting the homestead of appellants in harmony with this opinion.

CAMPBELL, P. J., and POLLEY, J., concur.
SHERWOOD and BROWN, JJ., not sitting.