KRUEGER, Respondent, v. CENTRAL LBR. CO., Appellant.

(230 N. W. 243.)

(File No. 6401. Opinion filed April 11, 1930.)

*Corrigan & Walton,* of Aberdeen, for Appellant.

*J. M. Berry,* of Ipswich, for Respondent.

SHERWOOD, J. February 11, 1919, respondent, plaintiff below, gave a mortgage to the state of South Dakota for $5,000 on the southeast quarter and northwest quarter of section 13, township 121, range 71. This mortgage was recorded on the 24th day of February, 1919,

January 6, 1921, respondent gave a mortgage on the northwest quarter of said section to appellant for $701.82.

The last mortgage was foreclosed January 9, 1922. Appellant bid in the land for $824.35, which was the full amount due on the mortgage with interest. Respondent did not redeem, and on January 13, 1923, a sheriff's deed was issued to appellant for said northwest quarter. This deed was recorded January 24, 1923.

Thereafter the state of South Dakota foreclosed its mortgage by advertisement. The printed notice of sale described both quarters, above described. This foreclosure sale occurred May 14, 1924. At the sale, the sheriff offered the southeast quarter of said section 13 for sale, and appellant bid therefor $5,203.31, which was the full amount then due on the state's mortgage, including interest and costs. So far as this record shows respondent was not present at the foreclosure sale, no other bid was made at said sale, and no request was made by any one concerning the sale. The land was struck off to appellant, and a sheriff's certificate of sale was duly issued to it on May 14, 1924, and thereafter properly recorded.

In the meantime, and on August 31, 1921, respondent deeded the northwest quarter above described to his brother-in-law Banik,

to pay his debt of $400, and the same day made a petition in voluntary bankruptcy. Such proceedings were had upon this petition that on the 17th day of December, 1921, respondent was given a discharge in bankruptcy which released him from all debts and claims provable against him under the acts of Congress. In the bankruptcy proceeding, respondent scheduled debts of more than $20,000. He claimed the southeast quarter of section 13, above described, as his homestead. He claimed no other land, and had no property not exempt. It is conceded that respondent's dwelling house and other farm buildings were situated upon said southeast quarter, and he had lived there with his family since the house was moved on the land in February, 1919.

On the 8th day of August, 1924, 86 days after the last foreclosure sale, respondent brought this action to redeem. In it he asserts his homestead right to the southeast quarter, and seeks to redeem it from the sale. He also seeks to charge the northwest quarter of said section which he does not claim to own with its purported share of the first mortgage debt. On the trial, the court found it required $5,665.52 to redeem from the foreclosure sale of the state's mortgage. That $2,565.70 of this sum should be charged against and borne by the northwest quarter of said section, and $3,078.84 should be charged against and borne by the southeast quarter. That, upon the payment by respondent to appellant of the last-mentioned sum, respondent would thereby redeem the southeast quarter from all lien or claim of appellant, and all claim under or by virtue of said mortgage. From a judgment entered in accordance with these findings, and from an order denying a new trial, defendant has appealed.

Before discussing the main question, we will consider finding No. 9, reading as follows: "The said defendant through its attorneys took charge of said sale and on the 14th day of May, 1924, caused the sheriff of Edmunds County, South Dakota, to sell the Southeast Quarter of Section 13 above described to satisfy the indebtedness secured by the mortgage held by the State of South Dakota."

There is no evidence sustaining or tending to sustain this finding. This is practically conceded by respondent. But he says it is not prejudicial to appellant "because this case was not tried nor decided on the question of fraud."

It is true that fraud was not specifically charged in the complaint, but the complaint alleged in substance what the court found in its ninth fiinding of fact. Such an allegation supported by finding No. 9 was undoubtedly prejudicial. It is clearly implied, if it did not directly allege, that appellant was officiously intermeddling with the duties of the sheriff, and the rights of the mortgagor. That, in fact, it was taking charge of, and conducting the foreclosure. Such conduct on the part of appellant, had it occurred, would raise the presumption that it was doing this to protect its own interests at the expense of the mortgagor. In an equity action, like this, that might well be the deciding factor in the case.

Being without any support in the evidence, finding No. 9 is stricken and will not be further considered.

■ So far as the record discloses, the foreclosure sale of the state's mortgage was honestly and fairly conducted, and appellant became the voluntary purchaser of the homestead quarter at such sale. By bidding the full amount due on the first mortgage, including interest and costs of foreclosure, appellant released the northwest quarter which it then owned from the first mortgage lien. It also became the owner of a lien on the homestead quarter subject to respondent's right to redeem that quarter within one year from the date of sale. Mac Gregor v. Pierce, 17 S. D. 51, 95 N. W. 281; Farr v. Semmler, 24 S. D. 290, 123 N. W. 835; section 2887, R. C. 1919, as amended by chapter 164, Laws of 1927.

■ By the foreclosure sale, the first mortgage was eliminated; and the only rights to be determined are between respondent's claim of homestead and appellant's claim under the mortgage foreclosures. The land is the same half-section. originally owned by respondent. Appellant changed its relation to the northwest quarter when it obtained a sheriff's deed to that land. It then ceased to be a creditor of respondent, and became the owner of the quarter subject to the first mortgage. Boyce v. Hawn, 52 S. D. 53, 216 N. W. 589, 591.

All these changes appear to have been made voluntarily by appellant, and all were made with full knowledge of respondent's homestead rights to the southeast quarter. These homestead rights accrued in February, 1919, long before appellant's rights attached to any part of said land. The court has found that respondent and

his family occupied the southeast quarter continuously as a homestead ever since February, 1919.

In a very recent case, this court has passed upon many of the questions here involved, upon facts almost identical with the case at bar. In that case we said: "The justice of saving the debtor's exemptions from forced seizure by the indirect method of marshaling securities is apparent. Extending to him the benefits of the doctrine is necessary to a full enjoyment and protection of such exemptions." Boyce v. Hawn, supra.

We further said: The homestead claimant was entitled to have the nonhomestead quarter sold first, and the homestead sold only in the event it was necessary to pay the balance remaining. This doctrine is discussed and maintained in the following cases: Boyce v. Hawn, supra; Nolan v. Nolan, 155 Cal. 476, 101 P. 520, 132 Am. St. Rep. 99, 17 Ann. Cas. 1056; McCreery v. Schaffer, 26 Neb. 173, 41 N. W. 996; Colby v. Crocker, 17 Kan. 527; Brown v. Cozard, 68 Ill. 178; McArthur v. Martin, 23 Minn. 74; Mitchelson v. Smith, 28 Neb. 583, 44 N. W. 871, 26 Am. St. Rep. 357; White v. Fulghum, 87 Tenn. 281, 10 S. W. 501; Equitable Life Ins. Co. v. Gleason, 62 Iowa, 277, 17 N. W. 524; Flowers v. Miller (Ky.) 16 S. W. 705; Wilson v. Patton, 87 N. C. 318; Douglas County State Bank v. Steele, 54 N. D. 686, 210 N. W. 657, 659; 18 R. C. L. 463; 29 C. J. 877 et seq.; Freeman on Executions, p. 440.

In view of Boyce v. Hawn, supra, no further discussion is needed here. We hold respondent had the right to invoke the doctrine of marshaling assets and securities to protect his homestead right, unless he had waived the right by failing to request that the nonhomestead quarter be first sold and the homestead quarter be sold only in the event it was necessary to pay a balance remaining.

It is conceded that respondent did not demand the sale of the nonhomestead quarter either at or prior to the foreclosure sale, or at any other time, and it is the contention of appellant that such failure on the part of respondent bars him from now having the assets and securities marshaled to protect his homestead right. And appellant argues that it is unjust to it to permit respondent to wait until after it had invested its money in the homestead quarter and then seek to charge the nonhomestead quarter with a part of the

mortgage. In support of this contention, our attention is called to section 1538, R. C. 1919, which reads as follows:

"Where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, or of injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

"1. To the things upon which he has exclusive lien;

"2. To the things which are subject to the fewest subordinate liens;

"3. In like manner inversely to the number of subordinate liens upon the same thing; and

"4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had:

"(a) To the things which had not been transferred since the prior lien was created;

"(b) To the things which have been so transferred without a valuable consideration; and,

"(c) To the things which have been so transferred for a valuable consideration."

It should be observed that the statute permits, but does not require, any interested party to make the demand. The demand is only to be complied with when it can be done without loss to the first mortgagee or injustice to other persons.

The statute is merely an enactment of the equitable rule. Douglas County State Bank v. Steele, supra, and cases cited. In this opinion, the court said: "The statute, like the rule, has regard to the rights of all who have 'interests' in the property involved. Like the rule, it applies only where it may do so without risk of loss to the senior lienholder or injustice to other persons." Citing Irvine v. Perry, 119 Cal. 352, 51 P. 544, 949.

The question is: Can the failure of respondent to make this demand prior to the sale of his homestead defeat his homestead right? We think not. In the first place, the homestead right is provided for in the Constitution "to all heads of families." S. D. Const. art. 21, § 4. It is a right jealously guarded by the law for the protection, not only of the debtor, but of his family. Chapter 3, title 1, p. 95, R. C. 1919.

This court said in Boyce v. Hawn, supra: "A court has no authority to impose upon the homestead a greater burden than has been placed thereon by the parties themselves, or by the law."

It is said in Freeman on Executions, § 440: "Homestead laws should be liberally construed, and no intention should be presumed, nor should any interpretation be indulged, which is at variance with the natural and obvious purpose of the parties. The claimants, in the absence of any expression to the contrary intention, should be presumed to intend no further peril to their homestead than necessity demands, while he who receives a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead. Hence a mortgage on a homestead and other property may fairly be interpreted as a waiver of the homestead right only so far as may be necessary to secure the debt; or, in other words, as a stipulation that the homestead may be sold, if the other property proves inadequate to satisfy the mortgagee's demand."

Applying these rules and testing respondent's conduct by them, it cannot be said that respondent intended to mortgage his homestead when he gave the mortgage of $701.82 on the northwest quarter, or that he intended to waive or lose his homestead right merely by not attending the foreclosure sale and demanding that the nonhomestead quarter be first sold.

In fact, his living with his family upon the homestead quarter for nearly ten years, his occupying the land as a homestead at the time of the sale, and his continuing to occupy the same down to the present time, negatives any presumption that he had at any time intended to abandon the homestead or relinquish his homestead right. The fact that he brought this action within three months after the foreclosure sale, and is now seeking to enforce his homestead right, negatives any such presumption. It must not be overlooked in this case that appellant not only bought the nonhomestead land burdened with the first mortgage, but he bought the homestead quarter burdened with ten years' assertion of respondent's homestead rights to that land, and respondent was continuing to assert that right by living upon the land at the time of the sale, and ever since said time.

█ On the other hand, no greater burden has been placed upon the nonhomestead quarter by this judgment than it was subject to before the foreclosure sale. It was liable to pay its share of the first mortgage debt when appellant took and foreclosed its mortgage on it. If appellant wished its value to be tested by a sheriff's sale, section 1538, R. C. 1919, gave him the same right respondent had to demand its sale. Having this right, he voluntarily sought to transfer the entire first mortgage debt to the homestead quarter and thus relieve his own land from its share of the debt. He has suffered no legal detriment by respondent's failure to make demand before foreclosure sale. A homestead claimant does not lose his right to have assets and securities marshaled by failure to demand that nonhomestead property covered by the first mortgage shall be first sold, where no detriment was caused to the purchaser thereby. Douglas County State Bank v. Steele, supra. Wapples on Homesteads and Exemptions, p. 557.

Our section 1538, supra, affixes no penalty for failure to make demand before sale or at any other time. We think the usual equitable rules must be applied in each case.

Appellant contends in its argument: It was not a party to any understanding or agreement by which the northwest quarter was to be charged with any part of the first mortgage debt. That its second mortgage was in statutory form. Therefore, the northwest quarter is not liable.

█ Respondent claims in its argument that an examination of the records shows that appellant's second mortgage excepted a mortgage of $2,500 covering this and other descriptions of property. As neither of these claims appear in anything except the arguments, they cannot be considered. We have repeatedly held that statements appearing only in the argument are not proof, and will not be considered. Harrison v. C., M. & St. P. Ry. Co., 6 S. D. 100, 60 N. W. 405; Halverson v. Glass, 36 S. D. 225, 154 N. W. 444; Karlen v. Trebble, 45 S. D. 570, 189 N. W. 519; Farmers' State Bank of Turton v. Van Houten, 52 S. D. 528, 219 N. W. 206; Farmers' & Merchants' State Bank of Tripp v. Doering, 53 S. D. 508, 221 N. W. 373.

█ However, the record affirmatively shows that when appellant took its second mortgage the first mortgage had been on record for nearly two years, and respondent had been living with

his family in the house he now occupies upon the homestead quarter for more than two years. Appellant was therefore charged with knowledge, not only of the first mortgage, but of appellant's homestead rights in the southeast quarter. It cannot now escape liability by merely asserting it was not a party to an agreement which assumed any part of the first mortgage debt.

We have carefully considered all the other assignments of error, and find them without merit.

The judgment and order of the trial court are affirmed.

BROWN, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., concurs in result.