**In re Donald Burnell KELLEY, dba Rest Haven Resort, fdba Pete's Cafe, fdba Smokey's Bar–B–Que and Mildred Louise Kelley, Debtors.**

**Donald Burnell KELLEY and Mildred Louise Kelley, Debtors, and Rick A. Yarnall, Chapter 13 Trustee, Plaintiffs,**

**v.**

**Robert HORNER and Mildred Horner, Defendants.**

**Bankruptcy No. 480–00084.**
**Adv. No. 480–0100.**

United States Bankruptcy Court,
D. South Dakota.

Nov. 24, 1980.

---

**43.** *Supra*, fn. 38.

J. Bruce Blake, Sioux Falls, S. D., for debtors–plaintiffs.

Rick A. Yarnall, Dana, Golden, Moore & Rasmussen, Sioux Falls, S. D., for trustee in bankruptcy.

Edward J. Leahy, May, Johnson, Doyle & Becker, P. C., Sioux Falls, S. D., for defendants.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

Donald and Mildred Kelley, Debtors, filed a business Chapter 13 Petition on April 2, 1980. As part of that case, Debtors filed the above entitled Complaint. In the Complaint Debtors request the Court to hold that: (1) a three page document dated January 11, 1979, did not create a valid second mortgage upon Debtors' homestead property; (2) that Debtors' homestead exemption is superior to the second mortgage created by the three page document dated January 11, 1979; and (3) that Debtors are entitled to avoid the second mortgage created by the three page document as a fraudulent transfer under 11 U.S.C. Section 548(a)(2).

Defendants filed an answer asking the Court to deny the requested relief. Briefs were submitted by counsel.

Based on the pleadings and the evidence submitted at the hearings the Court makes the following findings of fact.

## FACTS

On January 11, 1979, Debtors borrowed $10,000.00 from Defendants. Debtors borrowed the money to use as operating expenses for the business known as Smokey's Bar-B-Que. In return for the loan Debtors signed a three page document, hereinafter Exhibit 1, that purports to give Defendants a second mortgage on Debtors' homestead exemption.

Defendant Mildred Horner drafted Exhibit 1. Exhibit 1 is dated January 11, 1979. After reciting that Defendants lent Debtors $10,000.00, Exhibit 1 sets out a repayment schedule. Below the repayment schedule, Exhibit 1 reads as follows:

"It is agreed by and between all parties involved in this transaction there will be a second mortgage registered in Charles Mix COUNTY, CITY of Lake Andes, STATE of South Dakota at the court house in their records on the forty (40) acres owned by the Kelley's at Lake Andes known as REST HAVEN COUNTRY CLUB consisting of: one (1) two bedroom home with basement; two (2) bedroom cabins with kitchens; one (1) 1 room cabin with kitchen; 8 motel units–3 of which has kitchens; entertainment center consisting of a 50′ × 80′ ballroom and 30′ × 90′ bar; eight (8) bedroom apartments above the bar with kitchen, living room and two baths; three (3) wells; complete water system with pressure tanks; septic tanks for the entire operation. LEGAL DESCRIPTION of this property attached.

In the event the previous loan on the above property is satisfied before this loan agreement is terminated it is understood and agreed between all participating parties, Robert F. Horner and Mildred Horner, or survivor status will

change to first mortgage holder until all the notes on the loan have been paid in full."

SDCL 43–45–3 grants Debtors a $30,-000.00 homestead exemption. In their Chapter 13 Petition Debtors claimed a homestead exemption in the 40 acre resort property that Defendants allegedly have a second mortgage on under Exhibit 1. Exhibit 1 contains no waiver of Debtors' right to claim a homestead exemption in the property covered by Exhibit 1.

Debtors' homestead property is worth approximately $40,000.00. The Commercial State Bank of Wagner and the SBA have a first mortgage of approximately $25,000.00 on Debtors' homestead property.

Donald Kelley, Debtor, testified that he intended only to make a personal loan. He did not intend Exhibit 1 to give Defendants a second mortgage on his homestead property. He now realizes that Exhibit 1 states that Defendants have a second mortgage on his homestead property.

Mildred Horner, Defendant, testified that she intended the $10,000.00 loan, made in five notes of $2,000.00 each, to be protected by the Debtors' homestead property. She drafted Exhibit 1 with that purpose in mind. Ms. Horner is not an attorney.

On April 3, 1979, Defendants had Exhibit 1, along with a copy of the five promissory notes totaling $10,000.00, recorded with the Register of Deeds for Charles Mix County. Defendants gave Debtors no further money on April 3, 1979, when Defendants recorded the second mortgage.

## ISSUES

The issues presented to the Court are: (1) whether Exhibit 1 created a valid second mortgage on Debtors' homestead property; (2) whether Defendants' second mortgage is a superior lien to Debtors' homestead exemption when the mortgage contained no waiver of Debtors' right to claim a homestead exemption in the property covered by the second mortgage; and (3) whether Debtors can avoid Defendants' second mortgage as a fraudulent transfer under 11 U.S.C. Section 548(a)(2).

### (1) *Valid Mortgage*

The first issue presented to the Court is whether Exhibit 1 created a valid second mortgage on Debtors' homestead property.

According to Debtors, Exhibit 1 did not create a valid second mortgage since it contained no express language granting Defendants a 'security interest' in Debtors' homestead property. Further, Debtors' Counsel argues that the language used in Exhibit 1 that there "will be a second mortgage" is prospective.

This Court holds that Exhibit 1 did create a valid second mortgage on Debtors' homestead property.

This Court believes that Debtors intended under Exhibit 1 to grant Defendants a second mortgage on their homestead property in exchange for the $10,000.00 loan. Any layman reading Exhibit 1 can clearly understand that Defendants are granted a second mortgage on the property described in Exhibit 1. In compliance with South Dakota laws, Defendants recorded Exhibit 1.

SDCL 44–8–1, labeled "Creation, renewal or extension of real property–Formalities required," provides that:

"A mortgage of real property can be created, renewed, or extended only by writing, executed with the formalities required in the case of a grant of real property."

In *Walter Wood Mowing & Reaping Mach. Co. v. Lee*, 4 S.D. 495, 57 N.W. 238 (1954), the mortgage in question had not been acknowledged or signed by two witnesses as required by South Dakota law. In interpreting the forerunner of SDCL 44–8–1, which read exactly the same, the Court held that,

"(I)f the instrument offered in evidence is sufficient to show that the mortgagor intended to create a lien upon the property in favor of the plaintiff, it is sufficient as between the parties thereto, and as against parties having actual notice of such lien." 57 N.W. at 240.

In accord with South Dakota law, this Court holds, that Exhibit 1 did create a valid mortgage where Debtors intended to grant Defendants a second mortgage on their homestead property.

### (2) Homestead Exemption

The second issue presented to this Court is whether Defendants' second mortgage is a superior lien to Debtors' homestead exemption when the mortgage contained no waiver of Debtors' right to claim the homestead exemption in the property covered by the mortgage.

Debtors' Counsel argued that Debtors are entitled to claim a homestead exemption in the property covered by the second mortgage since Exhibit 1 contained no waiver of Debtors' right to claim the homestead exemption. Debtors' Counsel argued that under South Dakota law the homestead exemption is superior to any mortgage on the homestead property unless Debtors have signed a waiver of their right to claim a homestead exemption in the property covered by the second mortgage. Debtors' Counsel argued that if Debtors' homestead exemption is superior to Defendants' second mortgage, then Defendants are left with an unsecured claim where the combined total of the first mortgage and Debtors' homestead exemption exceed the value of the homestead property.

Article XXI, Section 4 of the South Dakota Constitution, provides that,

"The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal property, the kind and value of which to be fixed by general laws."

SDCL 43–31–1 provides in part that,

"The homestead of every family, resident in this state, as hereinafter defined, so long as it continues to possess the character of a homestead is exempt from judicial sale, from judgment lien, and from all mesne or final process from any court, to the extent and as provided in this code, . . . ."

South Dakota law does not prevent debtors from creating valid encumbrances on their homestead property. *Sidle v. Cheney*, 74 S.D. 540, 56 N.W.2d 86, 88 (1952). Further, mortgagees are not in violation of the "forced sale" clause of Article XXI, Section 4 of the South Dakota Constitution where they foreclose on a mortgage that contains a clause allowing the mortgagee, upon default by the mortgagor, to foreclose and sell the property by advertisement or under a judgment of foreclosure. *Karcher v. Gans*, 13 S.D. 383, 83 N.W. 430, 432 (1900). In a well written decision the Court in *Karcher* commented that,

"... If the framers of the constitution had intended that the homestead should be exempt from any sale other than an absolute conveyance, they certainly would have prohibited in express terms the giving of a mortgage or otherwise encumbering a homestead, as is done in the constitution or statutes of several of the states. Thompson, in his work on Homesteads, states the general rule as follows: "The general rule is that statutes creating a homestead exemption do not operate to restrain in any particular way the voluntary alienation or mortgage of the homestead, unless it is so expressed. A mere exemption from forced sale does not have this effect. Thomp. Homest. & Ex. Section 453, Wap.Homest. p. 714, states the rule thus: "Manifestly, if the homestead has been duly mortgaged by the man and wife, they can have nothing to say against its foreclosure on the ground of any remaining homestead rights. All these rights went when they made the mortgage, and the mortgagors are presumed to have had the quid pro quo." Id. 83 N.W. at 432.

In *Krueger v. Central Lumber Co.*, 56 S.D. 626, 230 N.W. 243 (1930), the Court, citing from Freeman on Executions, Section 440, states,

"(A) mortgage on a homestead and other property may fairly be interpreted as a waiver of the homestead right only so far as it is necessary to secure the debt; or,

in other words, as a stipulation that the homestead may be sold, if the other property proves inadequate to satisfy the mortgagee's demand."

This Court cannot find any South Dakota lien law or authority requiring an express waiver of homestead in the grant of a mortgage.

This Bankruptcy Court earlier held that Debtors intended to grant Defendants a second mortgage on the property described by Exhibit 1. Admittedly, Exhibit 1 does not contain a waiver of Debtors' right to claim a homestead exemption in the property covered by the second mortgage. However, this Court holds that, where Debtors voluntarily created an encumbrance on their homestead property, that Debtors therefore waived the right to claim a homestead exemption superior to that of the secured mortgage, since the mortgagee would be entitled to have the property sold to satisfy the mortgage.

This Court holds that Defendants' second mortgage in the amount of $10,000.00 is superior to any right Debtors may have to claim a homestead exemption in the property covered by the second mortgage.

### (3) *Avoidance Under 11 U.S.C. Section 548(a)(2)*

The final issue presented to the Court is whether Debtors can avoid Defendants' second mortgage as a fraudulent transfer under 11 U.S.C. Section 548(a)(2).

11 U.S.C. Section 548(a)(2) provides

"(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;"

Two other relevant sections are 11 U.S.C. Section 548(d)(1) and 11 U.S.C. Section 548(d)(2)(A). 11 U.S.C. Section 548(d)(1) states:

"(d)(1) For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition."

11 U.S.C. Section 548(d)(2)(A) further provides:

"(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;"

Defendants lent Debtors $10,000.00 on January 11, 1979. In return for the loan Debtors signed Exhibit 1, which grants Defendants a second mortgage on Debtors' homestead property. Exhibit 1 is dated January 11, 1979. On April 3, 1979, Defendants recorded Exhibit 1 with the Register of Deeds for Charles Mix County.

For purposes of 11 U.S.C. Section 548(d)(1), the transfer to Defendants of the second mortgage on Debtors' homestead property occurred on April 3, 1979. Debtors contend that since Defendants gave Debtors no new consideration on April 3, 1979, that Debtors failed to receive a reasonably equivalent value in exchange for the transfer. Therefore, Debtors argue that they are entitled to avoid the second mortgage under Section 548(a)(2).

This Court rejects Debtors' line of reasoning. Under 11 U.S.C. Section 548(d)(2)(A), value can be the securing of a present or an antecedent debt of the debtor. This Court holds that where the granting of a security interest by a debtor in his proper-

ty occurs contemporaneously with the creditor giving the debtor a reasonably equivalent value for the security interest, no fraudulent transfer under Section 548(a)(2) exists when the creditor perfects that security interest at a later date that is within one year of the filing of the debtor's bankruptcy petition. However, where the debtor incurs a debt to a creditor, then at a later date grants that creditor a security interest in his property without receiving any new consideration, a fraudulent transfer under Section 548(a)(2) has occurred if that creditor perfects the security interest within one year from the date of the filing of the bankruptcy, assuming all the other elements exist.

Here, the lending of the $10,000.00 to Debtors occurred contemporaneously with Debtors granting Defendants a second mortgage on their homestead property. Although the Defendants did not perfect that mortgage until a later date, no fraudulent transfer occurred.

## CONCLUSION

This Court holds that Debtors granted Defendants a second mortgage under Exhibit 1 on their homestead property. Although Exhibit 1 contained no waiver of Debtors' right to claim a homestead exemption in the property covered by the secured mortgage, the second mortgage is superior to the Debtors' homestead exemption.

This Court cannot find any South Dakota lien law or authority requiring an express waiver of homestead in the grant of a mortgage.

Finally, Debtors are not entitled to avoid the second mortgage as a fraudulent transfer.

This Memorandum Decision will constitute Findings of Fact and Conclusions of Law and Defendants' counsel shall submit a Judgment consistent with the foregoing.