Argued November 22; modified December 28, 1938

IN RE TUCKER'S ESTATE

TUCKER *v.* TUCKER ET AL.

(85 P. (2d) 1025)

*W. W. McKinney*, of Salem, for appellant.

No appearance for respondents.

BELT, J. L. A. Tucker died intestate on February 26, 1937, leaving surviving him as his sole heirs at law his widow, Ellen Tucker, and four children by a former wife, viz., Lloyd R., Glenn L., and Roy M. Tucker and Minnie Dell Hoffman, and a grandson, Kenneth Butler—all of legal age. At the time of his death, L. A. Tucker was the owner of five acres of land in the city of Lebanon, in Linn county, Oregon, having an appraised valuation of $7,100. This land was encumbered by a first mortgage of the World War Veterans' State Aid Commission of the state of Oregon, upon which there was due a balance of approximately $1,900. The mortgage covered a portion of the premises of the estate and also other land owned by Glenn Tucker which, according to statement of counsel for appellant, has been released pending this appeal and is not involved herein. The First National Bank of Lebanon also had a mortgage of $1,400 covering the entire tract of land belonging to the estate. This latter encumbrance was a first mortgage on the land not covered by the Veterans' State Aid Commission first mortgage lien.

In the course of the administration of the estate, the county court set aside a parcel of land 150′ by 80′ as a homestead for the widow. Upon this part of the estate the decedent, shortly before his death, had erected a new home in which he and his wife were living when Tucker died.

Aside from the mortgage encumbrances above mentioned there were numerous other claims of indebtedness against the estate. The widow, who was appointed administratrix, was granted an order, upon her petition, to sell the real estate to satisfy such claims. Subsequently, the administratrix again petitioned the county court for an order authorizing her from the proceeds of such sale:

"To settle all accounts and bills set forth in her petition to sell real property, and more especially granting her authority to pay out of the moneys received on said sale the claim of the World War Veterans' State Aid Commission on mortgage held by them on the property of the estate and also the second mortgage held by the First National Bank of Lebanon, Oregon, so that said estate shall pay off said indebtedness out of the property of the estate, and that the property set aside to the widow as a homestead shall be free and clear of any indebtedness."

Upon objection to the petition being made by the other heirs, such matter, pursuant to statute, was transferred and set over to the circuit court for hearing and determination.

The circuit court, after hearing, entered an order:

(1) "* * that the mechanic's liens upon the homestead property heretofore set apart to the petitioner, Ellen Tucker, be paid by the owner of said homestead, to-wit, Ellen Tucker, personally, and shall not be any claim or claims against the Estate of L. A. Tucker, deceased.

(2) "* * that the tax liens and mortgage liens upon the Estate property and the homestead property shall be paid pro rata by the Estate and the owner of said homestead, Ellen Tucker, and each property shall bear its proportionate share of the tax liens and mortgage liens.

(3) "\* \* that all the expenses of the last sickness, funeral expenses and cost of probate shall be paid out of the funds of the Estate of L. A. Tucker, Deceased, provided there are sufficient funds in said Estate to pay all of said expenses, and in case there are not sufficient funds to pay the expenses of the last sickness, funeral expenses and cost of probate in said Estate, then the homestead owners shall pay a proportionate share of said expenses."

From the above order the administratrix appeals.

The precise question, as presented by the brief of the appellant, is whether the widow, in the absence of statute, has the right to require that other real property included in the mortgages be first sold to satisfy such indebtedness before resorting to the homestead. It is regretted that this rather difficult and complex question has been presented without any appearance of respondents on appeal.

■ Ordinarily the question of the marshaling of assets or securities arises in controversies between creditors. Indeed, the general rule is that a debtor has no right to invoke such doctrine. However, in many jurisdictions, even in the absence of statute, the modern trend of authority recognizes an exception to the general rule where a creditor is secured by the homestead and also by non-exempt property of the debtor. See numerous cases cited in notes 44 A. L. R. 763 and 77 A. L. R. 371. In some states where the courts have refused to protect the homestead against the claims of creditors amply secured by non-exempt property of the debtor, statutes have been enacted directing that resort be had to the homestead only after other security has been exhausted.

In 3 Freeman on Executions (3d Ed.) § 440, the author, after commenting on the contrariety of opinions

of courts on the question of debtor's seeking to marshal securities, states:

"* * * On the one side, it is insisted that the right to compel a marshaling of assets never existed in favor of judgment debtors, but only in behalf of persons claiming under them, and that the creation of the lien by the homestead claimants was, in effect, an agreement on their part that the lienholder might at his discretion sell any of the property which was subject to such lien, and that such agreement precludes such claimants from exercising any control over such discretion. But homestead laws should be liberally construed, and no intention should be presumed, nor should any interpretation be indulged which is at variance with the natural and obvious purpose of the parties. The claimants, in the absence of any expression of a contrary intent, should be presumed to intend no further peril to their homestead than necessity demands, while he who receives a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead. Hence a mortgage on a homestead and other property may fairly be interpreted as a waiver of the homestead right only so far as may be necessary to secure the debt; or, in other words, as a stipulation that the homestead may be sold, if the other property proves inadequate to satisfy the mortgagee's demand. Under this interpretation, the homestead claimants are entitled to compel the sale of the other property in preference to the homestead, and need not submit to the sale of the homestead until the other securities have been exhausted, without fully discharging the debt."

This court, in a creditors' suit to set aside a fraudulent conveyance (*Smith v. Kay*, 153 Or. 80 (54 P. (2d) 1160, 55 P. (2d) 794), protected the homestead right of the fraudulent vendor by compelling the nonexempt property, also given as security, to be sold first to satisfy the mortgage indebtedness. We believe the

principles therein announced are controlling here. In that case, Mr. Justice BAILEY, speaking for the court, quoted extensively from *Boyce v. Hawn*, 52 S. D. 53 (216 N. W. 589), a leading case on the extension of the doctrine here sought to be applied by the homestead debtor.

We are not unmindful that the mortgagees are not parties to this proceeding and no action taken prejudicial to their rights would be binding upon them. In the instant case the administratrix asks that the nonexempt property of the estate be sold first to pay both mortgages. If that is done and from the proceeds of the sale the mortgages are fully paid, we fail to see in what way the mortgagees could be injured. A different situation would be presented where a controversy existed between senior and junior mortgagees. What has been said must be considered in the light of the particular factual situation before us for consideration. Under the record the only parties objecting to the sale in the instant proceeding are the other heirs of L. A. Tucker—children by a former marriage—and they have no just cause to complain if the homestead can be set aside to the widow free and clear of encumbrances without prejudicing the rights of creditors.

Having in mind the beneficent purpose and spirit of the homestead law, we are of the opinion that the relief sought by the widow is justified under the law. That part of the order requiring the mortgage indebtedness and the tax liens to be prorated by the estate and the owner of the homestead is reversed and the remainder of the order is affirmed. The cause is remanded with directions to proceed in a manner not inconsistent with this opinion.